[L.A. No. 30364. In Bank. Sept. 19, 1975.]

LAURA CAROL SAFER et al., Petitioners, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
C. STANLEY TROM, as District Attorney, etc., Real Party in Interest.

**COUNSEL**

Ellen Lake, Cohen, Carder & Hogelhardt and Tom Stanley for Petitioners.

Norton Tooby, Joseph Remcho, Deborah Hinkel, Jennie Rhine, David A. Rosenfeld and Gordon R. Gaines, as Amici Curiae on behalf of Petitioners.

Evelle J. Younger, Attorney General, C. Stanley Trom, District Attorney, Laurence D. Grossman and Frederick A. Jones, Deputy District Attorneys, for Real Party in Interest.

## OPINION

TOBRINER, J.—In this case we hold that a court acts in excess of its jurisdiction when it permits a district attorney to disregard the statutory confines of his authority by prosecuting under the Code of Civil Procedure a contempt stemming from a civil litigation in which the district attorney could rest his participation neither upon standing as a party nor upon statutory authorization. To forbid the continuation of the unlawful proceedings thus instituted, we issue our writ of prohibition.

In the spring of 1974 the United Farm Workers of America (hereinafter Farm Workers) set up picket lines around the fields of several growers of strawberries in Ventura County. These growers, alleging that the picketing constituted unlawful interference with their farming operations, retained an attorney who on May 30, 1974, filed suit seeking injunctive relief, damages of $50,000 per day, and punitive damages of $1,000,000 against the Farm Workers and their members. On the same day on which plaintiffs (Frank McGrath Ranch Company et al.) filed this complaint, they also obtained from the Ventura Superior Court a temporary restraining order which severely limited the spacing and number of pickets.[1]

On the following day the Ventura County Sheriff arrested a number of union members and sympathizers who had assembled at one of the growers' fields to picket;[2] the sheriff charged these persons with the commission of misdemeanors under Penal Code section 166, subdivision 4, i.e., wilful disobedience of a lawful court order.[3] Arraigned on this charge, Laura Carol Safer and each of her accused codefendants pleaded not guilty, requesting a jury trial within the time limits of Penal Code section 1382, subdivision 3. The court set trial dates accordingly.

[1]The order, inter alia, required pickets surrounding any given field to maintain a distance of at least 50 feet between themselves except at field entrances, at which they were permitted to have 4 pickets; the total number of pickets at any field could not exceed 50 regardless of the extent of the property to be picketed. Defendants challenge the validity of this order, but because of our resolution of the case, we do not reach this issue.

[2]In the declaration initiating the subsequent contempt proceeding under the Code of Civil Procedure, the declaring sheriff's officer indicated that some 250 persons had assembled to picket at one of the fields. Although the declarant swore that the behavior in question constituted a violation of the court order, he noted no other actions as constituting independent violations of law. Indeed he even noted that when defendants parked their vehicles in order to alight and engage in the conduct which led to their arrest, they parked "off the traveled portion of the roadway."

[3]Penal Code section 166 provides, in relevant part: "Every person guilty of any contempt of court, of either of the following kinds, is guilty of a misdemeanor: . . . 4. Wilful disobedience of any process or order lawfully issued by any court."

On the days set for these jury trials, however, the district attorney, rather than proceeding to trial, served[4] the defendants with orders to show cause in contempt proceedings prosecuted under Code of Civil Procedure section 1209.[5] The district attorney then procured dismissals of the misdemeanor charges "in furtherance of justice" (Pen. Code, § 1385) on the grounds that defendants had, moments before, become subject to the contempt proceedings that he had just instituted. In this manner the district attorney sought to convert a misdemeanor proceeding, in which defendants had the protection of a jury trial and other statutory safeguards, into a contempt proceeding, in which defendants would be stripped of these protections.

Defendants demurred to these new proceedings on several grounds: that the district attorney lacked authority to institute them; that the underlying restraining order suffered from unconstitutional vagueness; and that the facts stated did not constitute a contempt. Defendants further moved for a dismissal on the basis of Penal Code section 1387, which bars a second prosecution of a dismissed offense previously charged as a misdemeanor.[6] Alternatively, defendants urged that if their demurrer and motions for dismissal did not succeed, they stood entitled

[4]This service occurred in a questionable fashion. Although Penal Code section 1043 permits a misdemeanor trial to proceed if the defendant fails to appear at the time set for trial, and we have recently approved the entry of a guilty plea by counsel in such cases (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 304 [110 Cal.Rptr. 329, 515 P.2d 273]), the trial court nevertheless required the personal attendance of the defendants at a proceeding which the district attorney had told counsel would be a motion for dismissal of the charges. When defendants appeared for this purported dismissal, however, the district attorney procured service of orders to show cause in contempt prosecuted under the Code of Civil Procedure. At oral argument of this case the district attorney indicated that his office had suggested this procedure to the judge of the municipal court; although not briefed on this hearing, the propriety of this use of a court's discretionary power to require attendance at a dismissal appears highly questionable. (Cf. Witkin, Cal. Criminal Procedure (1973 Supp.) p. 396; *Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 477 [94 P.2d 983].)

[5]Code of Civil Procedure section 1209 provides, in relevant part: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: . . . 5. Disobedience of any lawful judgment, order, or process of the court . . . ." Although the statute does not in terms require wilful disobedience, as the analogous Penal Code provision does (see *supra,* fn. 3), the courts have long required proof of wilfulness beyond a reasonable doubt for conviction under this statute. (*Uhler* v. *Superior Court* (1953) 117 Cal.App.2d 147, 154 [255 P.2d 29, 256 P.2d 90]; *Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 484 [94 P.2d 983].)

[6]Because we conclude that in the instant case the district attorney lacked the authority to bring the action in question, we do not decide whether Penal Code section 1387 would bar a district attorney's prosecution of contempt under the Code of Civil Procedure in a case in which he *did have the authority* to bring the action, but prior to bringing it had filed and dismissed misdemeanor charges for the same offense. (See *People* v. *Nelson* (1964) 228 Cal.App.2d 135 [39 Cal.Rptr. 238]; *Ephraim* v. *Jamestown Judicial Dist. Ct.*

to a jury trial on the civil charges.[7] A consolidated argument on these matters took place on July 22 and 23, 1974; the court decided adversely to defendants on each of their contentions.

Throughout these contempt proceedings plaintiffs in the original civil litigation, which precipitated these events, did not appear by their retained counsel. All appearances on the behalf of Frank McGrath Ranch Company et al. were made by the District Attorney of Ventura County. The record reflects no attempt by the parties who had procured the original injunction to enforce it against defendants.

We granted an alternative writ of prohibition to consider the questions raised by these facts.

1. *The district attorney lacks statutory authority to prosecute this contempt under the Code of Civil Procedure.*

■ Neither statute nor decision empowers a district attorney to intervene in a contempt proceeding stemming from private civil litigation in order to enforce an injunctive order granted at the behest of one of the litigants. Although, as we shall explain, various statutes provide for the appearance of the district attorney in specific civil cases, none covers the circumstances of the present case; the district attorney here therefore lacks the necessary authorization to proceed in the matter before us.[8]

(1953) 120 Cal.App.2d 741, 744 [262 P.2d 56]; *Uhler* v. *Superior Court, supra,* 117 Cal.App.2d 147, 154; *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288; *In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854].)

[7]Our holding that the district attorney may not bring these proceedings obviates the need to reach the defendants' claim of the right to jury trial as persons accused of contempt and facing incarceration under Code of Civil Procedure section 1209. (See *ante,* fn. 6.) We therefore need intimate no views as to the necessity of a jury trial under either the federal or California Constitutions in cases of civil, criminal, direct, or indirect contempt under section 1209, whether prosecuted by the district attorney or private litigants. (See *Bloom* v. *Illinois* (1968) 391 U.S. 194, 201 [20 L.Ed.2d 522, 528, 88 S.Ct. 1477]; *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323 [115 Cal.Rptr. 632, 525 P.2d 72]; *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 298-299, fn. 8; *In re Harris* (1968) 69 Cal.2d 486, 491 [72 Cal.Rptr. 340, 446 P.2d 148]; *United Farm Workers, AFL-CIO* v. *Superior Court* (1968) 265 Cal.App.2d 212, 215 [71 Cal.Rptr. 513].)

[8]The dissent, in attacking the characterization of these contempt proceedings, misses the point of this case. Seeking a result by an appeal to nomenclature, the dissent fails to perceive that the issue before us is not whether we should characterize contempt as "civil" or "criminal," but whether the district attorney may bring these proceedings, whatever label one attaches to them. As we show, the district attorney can point to no such authorization. *The dissent points to no such authorization.* Moreover, we denominate as "civil" not the contempt proceedings themselves, but the unquestionably private litigation from which they issued.

Of course we do not question the long line of cases which, in *granting constitutional and other legal protections* to accused contemners, have denominated contempt

■    By the specificity of its enactments the Legislature has manifested its concern that the district attorney exercise the power of his office only in such civil litigation as that lawmaking body has, after careful consideration, found essential. An examination of the types of civil litigation in which the Legislature has countenanced the district attorney's participation reveals both the specificity and the narrow perimeters of these authorizations.

We set forth illustrative statutes which specifically empower a district attorney to bring a civil action; thus he may: defend suits brought against the county and bring actions to collect fines and recognizances (Gov. Code, § 26521); test the validity of laws providing for the payment of county funds and recover any funds illegally paid out (Gov. Code, §§ 26523, 26525); represent judges appearing in their official capacities as parties defendant (Gov. Code, § 26524); sue to abate public nuisances in the name of the People (Gov. Code, § 26528); bring proceedings for the commitment and treatment of incompetent or disturbed persons (Welf. & Inst. Code, § 5114); prosecute parents for disobedience of a child support order (Welf. & Inst. Code, § 11484); bring an action for the declaration of parental relationship (Civ. Code, § 231); and enforce certain business regulation laws (Bus. & Prof. Code, § 16754). Neither these nor any other of the various narrowly framed authorizing statutes, however, empower a district attorney to intervene at will in a civil case involving private parties in an economic dispute.

Even in some of these specifically authorized matters, moreover, the district attorney enjoys neither plenary power nor unbridled discretion. Thus he may prosecute certain actions only upon the request of a designated supervisory body.[9] In counties which employ a *county*

---

"criminal," as a shorthand expression of their conclusion that the protections in question were warranted. (E.g., *Bloom* v. *Illinois* (1968) 391 U.S. 194, 201 [20 L.Ed.2d 522, 528, 88 S.Ct. 1477] (right to jury trial); *Hotaling* v. *Superior Court* (1923) 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127] (right to specific allegations in charging affidavit); *Ex Parte Gould* (1893) 99 Cal. 360, 362 [33 P. 1112] (right against self-incrimination); *Ex parte Hollis* (1881) 59 Cal. 405, 408 (habeas corpus as mode of review).) At the same time we note that other decisions, in considering other issues, have differently characterized contempt; thus *In re Morris* (1924) 194 Cal. 63, 66 [227 P. 914], states that "[s]ummary proceedings for the punishment of contempt . . . have always been recognized as *sui generis,* frequently arising in connection with civil actions, often partaking somewhat of the character of civil remedies, and always partaking largely of the character of criminal prosecutions." (See also *City of Culver City* v. *Superior Court* (1952) 38 Cal.2d 535, 541 [241 P.2d 258]; *Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 474-476 [94 P.2d 983].)

[9]Government Code section 26523 provides that the district attorney may test the validity of laws requiring the disbursement of funds only upon the request of certain officials; Government Code section 26522 sets forth that he shall entertain questions

counsel, the statutes provide that his very presence deprives the district attorney of the power to perform certain duties.[10] We find, then, that the Legislature's narrow enumeration of the types of civil cases in which the district attorney may participate expresses its general mandate that public officers not use their funds and powers to intervene in private litigation.

Indeed, in implementing this legislative intent, we have imposed liability upon the district attorney when he overstepped the boundaries of his official authorization and its attendant immunities; we have done so even when the authorization in question framed the asserted powers in broad and general terms. (*Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 235 [11 Cal.Rptr. 97, 359 P.2d 465].) If in areas related to criminal prosecution the district attorney's authority has been subject to limitations,[11] then even stronger considerations dictate such limitations in noncriminal sectors in which he possesses only narrow and specific authorizations.

We find further indication that the district attorney's authority does not embrace the circumstances of this case in the Legislature's clear

regarding bond issues only upon request of the school board; Business and Professions Code section 16754 declares that he may institute actions concerning the restraint of trade only upon order of the Attorney General; Welfare and Institutions Code section 5114 states that he shall prosecute Lanterman-Petris-Short actions only if the board of supervisors has not delegated this duty to the county counsel.

[10]Government Code section 26529 specifically provides that in counties which employ county counsel a district attorney may not render an opinion to county officers (Gov. Code, § 26520), test the validity of laws providing for the payment of county funds (Gov. Code, § 26523), render school bond assistance (Gov. Code, § 26522), or represent a judge or court in its official capacity as a defendant (Gov. Code, § 26524). More generally, Government Code section 26529 provides that "*county counsel shall defend or prosecute all civil actions in which the county . . . is concerned . . . .*" (Italics added.) In construing this statute we start with the obvious proposition that county legal officers may become involved in litigation only if the county or public interest is involved; the quoted statute divides the litigative authority between the two county officers responsible for it, specifying that county counsel shall handle all civil matters. Thus even if one conceded the propriety of *any* public participation in this case, the statutes of this state provide that the county counsel shall bring this civil action. As we shall show, however, the defects in this action run deeper than the mere need for the substitution of county counsel.

[11]See *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 235 [11 Cal.Rptr. 97, 359 P.2d 465]. We note that, in spite of the broad powers granted to the district attorney in matters criminal by Government Code section 26500, the Los Angeles County District Attorney in 1973 concluded that he should seek special legislation to authorize his participation in a project aimed at the decrease of juvenile delinquency. (Declaration of Assemblyman Alan Sieroty, petitioners' exhibit K; Gov. Code, § 26500.5.) Such caution manifests a proper concern that the district attorney "should always do his sworn duty, of course, but he should always do it fairly and justly and not permit the great power with which he is clothed to be converted into an instrument of persecution." (*People* v. *Hail* (1914) 25 Cal.App. 342, 358 [143 P. 803].)

demonstration that it knows how to grant him such power when it wishes to do so. For example, Welfare and Institutions Code section 11484 provides that in cases in which the parents of a child receiving public assistance have applied for, or received, a divorce or separation "the district attorney may apply to the superior court in such action for an order directing either parent or both to show cause: . . . [w]hy the parent should not be held in contempt for his failure to comply with any order of support previously entered." Thus the Legislature, when it desired to authorize the district attorney's intervention in contempt proceedings stemming from private litigation to enforce an order, had no difficulty in expressing itself; its articulation of specific statutory authorization in that situation points to the absence of such authority in the instant case.

The absence of any statute empowering the district attorney to appear in private litigation such as the instant case demonstrates, moreover, legislative awareness that our legal system has long depended upon the self-interested actions of parties to pursue a dispute to its conclusion, or to decide, alternatively, that further time-consuming litigation serves no one's best interests.[12] Thus the district attorney's intrusion into this arena of conflicting private interests serves neither the public interest nor the statutory intent.

The intervention of the district attorney in these proceedings, springing from a civil suit is, indeed, the introduction of the government itself on one side of the litigation, casting the whole issue into a different framework. The weight of government tends naturally to tilt the scales of justice in favor of the party whom the government sponsors. Moreover, in cases like this the intrusion of the district attorney exposes the disadvantaged litigant to a special danger; the district attorney undertakes to bring about nothing less than his incarceration.

The authority marshalled by the district attorney does not alter our conclusion. On the one hand he argues that the criminal nature of this contempt renders it susceptible to his reach. On the other hand he argues that his general interest in the administration of justice and his standing as an officer of the court enable him to appear in this case on plaintiffs' behalf. Neither approach withstands scrutiny.

[12]Indeed for all that we can tell from the record in this case, the private parties plaintiff may have decided that vindication of an abstract legal right would not measurably assist in resolving the labor dispute from which the litigation grew; the record reveals no trace of plaintiffs' interest in prosecuting the contempt action. (Cf. Hart & Sacks, The Legal Process (1955) pp. 312-313.)

Arguing that disobedience of a court order "represents an affront to the court and the People of this state," the district attorney concludes that he may therefore prosecute this case;[13] this argument confounds means and ends. ■ To be sure, if the district attorney should decide that the interests of the People require the vindication of a court order, he may proceed under Penal Code section 166,[14] but if he does so, defendants enjoy the various rights of persons charged with crimes, not the least of which is trial by jury. As we have shown, however, the district attorney's authority to seek this criminal sanction under the *Penal Code* does not mean he may do so under Code of Civil Procedure section 1209.[15]

As an example of the district attorney's powers to prosecute contempt under Code of Civil Procedure section 1209 he nevertheless relies upon *Bridges* v. *Superior Court* (*supra,* 14 Cal.2d 464). Assuming without deciding the continued viability of *Bridges'* proposition that a stranger to a civil action has standing to call a contempt to the attention of the court,[16] we nevertheless note that it does not apply to the present facts.

First, *Bridges'* assertion concerning the irrelevance of the party bringing the alleged contempt to the attention of the court predicated itself upon the condition that the accused not be *prejudiced* by the intrusion of this new party into the proceeding; here the defendants did suffer prejudice, not only from the presence of the district attorney as a prosecutor, carrying with him the dignity and authority of the People,

---

[13]Embracing this suggestion of the district attorney, the dissenting opinion argues that the punishment of contempt "secures an important *public* interest." (*Infra,* p. 245; italics in original.) From this axiom the dissent deduces that "a public official *should be* permitted to go forward." (*Infra,* at p. 245; italics added.) Concealed in the phrase just quoted lies an extraordinary proposition of law: that the district attorney possesses the authority under Code of Civil Procedure section 1209 to enforce *any* order stemming from *any* civil litigation in this state. Not surprisingly, the dissent cites no authority for this innovation, for no case has so held. District attorneys hold statutory powers, not, as the dissent seems to suggest, a roving commission to do justice.

[14]See *In re Morris* (1924) 194 Cal. 63 [227 P. 914]; in rejecting the argument that contempt may not constitute both a crime punishable under the Penal Code and an act susceptible to punishment under the Code of Civil Procedure, *Morris* does not, of course, consider or resolve the question of the district attorney's authority to prosecute a contempt under the Code of Civil Procedure.

[15]*In re Brambini* (1923) 192 Cal. 19 [218 P. 569], in which the district attorney was a proper party to the underlying suit, does not hold otherwise; that case, as the district attorney recognizes, supplies no authority for his participation in the contempt enforcement aspect of a suit which he could not institute.

[16]Substantively, the United States Supreme Court reversed the result on the question ·of the use of the contempt power against an out-of-court act fraught with First Amendment implications. (*Bridges* v. *California* (1941) 314 U.S. 252 [86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346].) Since its decision in 1939 no California appellate court has cited *Bridges* for the standing question there discussed.

but also from his ability to use the court and police in his service of process.[17] Thus *Bridges* does not deal with the special considerations that arise when the question is whether a public officer possesses the authority to do what private parties may.

Secondly, *Bridges* holds only that anyone may present to the court an affidavit alleging the contemptuous acts; the court says nothing of the situation we here confront: the district attorney's active prosecution, as a litigant, of the contempt. Other statutes (and cases construing them) specifically empowering "any person's" active participation in various types of suits therefore prove only that the Legislature knew how to authorize such participation;[18] its failure to do so here serves merely to emphasize the absence of authorization.

■ Nor does the district attorney's general interest in the administration of justice or his standing as an officer of the court authorize his participation in this case. The Legislature intended no such penumbra of vague and extended powers to attend that office. As we have already shown, if and when the Legislature wished to empower the district attorney to participate in a contempt proceeding arising from private litigation it did not rely on "inherent" power, but passed specific legislation.[19] (Welf. & Inst. Code, § 11484.) Thus the district attorney's status as an officer of the court and his professed general interest in the administration of justice do not suffice as substitutes for legislative authorization.[20]

---

[17]See footnote 3, *ante*. Like *Bridges, McFarland v. Superior Court* (1924) 194 Cal. 407 [228 P. 1033], considers only whether interested private parties other than the original suitor may bring an alleged contempt to the court's attention; it does not stand for the proposition that the district attorney may prosecute the action. See also footnote 18, *infra*.

[18]Thus *People v. Centr-O-Mart* (1950) 34 Cal.2d 702 [214 P.2d 378], readily distinguishes itself; in that case the statute in question provided that "any person or trade association *may bring an action*" to enjoin violation of the Unfair Trade Practices Act. (Bus. & Prof. Code, § 17070; italics added.) We there held only that "any person" included the district attorney. It is significant that the statute by its emphasized words specifically authorized the actual prosecution of the suit by "any person." By contrast, Code of Civil Procedure section 1211, upon which the district attorney relies, merely speaks of the presentation of an affidavit; in no sense does it authorize prosecution of the ensuing proceedings by the person presenting it. Were it otherwise, anyone might preempt the prosecution of any contempt by being the first to the courthouse with his affidavit.

Similarly, *Pierce v. Superior Court* (1934) 1 Cal.2d 759 [37 P.2d 453, 460, 96 A.L.R. 1020], dealt with a statute which provided that "any person" might bring an action to cancel fraudulent voter registrations. After canvassing the policy considerations involved we held merely that the statutory language included the Attorney General.

[19]See *ante*, pages 237-238.

[20]An opinion of the Attorney General (56 Ops.Cal.Atty.Gen. 53 (1973)) dealing with the duties of the county counsel and district attorney to collect a fine imposed in

■ That the district attorney might have prosecuted these acts as violations of the Penal Code does not empower him to do so under the Code of Civil Procedure; as we have shown above, he can find no statutory authority to do so; this absence of authority has deep roots in principle. While it is true that the penalty for contempt under Code of Civil Procedure section 1209 may be less than that under the Penal Code, the defendant facing a Penal Code prosecution has the right to trial by jury, a protection which the alleged contemner prosecuted under the Code of Civil Procedure does not enjoy. This right, always significant,[21] assumes special importance in the context of contempt proceedings.

"Contemptuous conduct, though a public wrong, often strikes at the most vulnerable and human qualities of a judge's temperament. Even where the contempt is not a direct insult to the court or the judge, it frequently represents a rejection of judicial authority, or an interference with the judicial process or with the duties of officers of the court." (*Bloom* v. *Illinois, supra,* 391 U.S. at p. 202 [20 L.Ed.2d at pp. 528-529].) The judge, of course, will have uppermost in his mind the need for preserving the dignity and authority of the court; the jury may add to these considerations a sense of the needs of the community as a whole. Thus the attempted transformation of contempt proceedings brought under the Penal Code into a prosecution under the Code of Civil Procedure achieves a possible reduction of punishment only at the cost of a cherished protection. ■ We hold that the district attorney does not have the power to force the defendants to make such an exchange.[22]

---

punishment of contempt lends no support to the position of the district attorney. The question in that opinion concerned the collection of a fine already imposed; nothing suggests that either public officer possesses the power to prosecute the underlying private action. Moreover, even the power to collect the fine stemmed from a specific statutory authorization. (Gov. Code, § 26521.) The only question was the effect of a subsequent legislative modification of this express authority.

[21]"Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it." (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 156 [20 L.Ed.2d 491, 499-500, 88 S.Ct. 1444].)

[22]We do not here rule on the propriety of a statute authorizing the district attorney to make such an election of remedies if the defendant were *not* thereby deprived of his right to trial by jury; if case law or legislation secured to defendants this right, another

Neither the Legislature nor our courts, then, have authorized the district attorney's participation in this case; we must therefore consider the effect of this unauthorized prosecution upon the jurisdiction of the court countenancing it.

2. *Because the superior court acted in excess of its jurisdiction in permitting the district attorney to prosecute these proceedings, a writ of prohibition must issue.*

■ We have long recognized that the lack of jurisdiction, in the broad sense of this word, establishes grounds for our issuance of a writ of prohibition. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].) In *Abelleira* we explained: " '[I]t seems well settled (and there appears to be no case holding to the contrary) that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction' . . . Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari.*" (17 Cal.2d at pp. 290-291.)

■ In the present case the Superior Court of Ventura County, in permitting the District Attorney of Ventura County to prosecute this case under the Code of Civil Procedure, contrary to the statutorily authorized procedures for such proceedings and in excess of his authority, failed regularly to conduct the proceedings. In so doing, it exceeded its jurisdiction. (*Menveg* v. *Municipal Court* (1964) 226 Cal.App.2d 569 [38 Cal.Rptr. 232].)

This case presents a disturbing instance of intervention by a public authority in an acrimonious labor dispute. By imposing the weight of his office and the advantages of the public purse on the side of management, the district attorney at one stroke relieves one of the civil litigants of the necessity of financing his half of the battle, deprives defendants of the right to jury trial which they enjoyed in the previous criminal prosecution, and simultaneously suggests that public order necessitates management success in this private civil dispute. From such acts, even when

question might be presented. We do not, however, face or decide this case today. See footnote 7, *ante.*

well-intentioned, spring some of the bitterest chapters in the social history of our nation. The Legislature of this state has wisely refrained from empowering the public officer in question to play this role.

Let a peremptory writ of prohibition issue as prayed.

Wright, C. J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—I dissent.

Until today the purpose for enforcing a court order by contempt under Code of Civil Procedure section 1209 was to maintain the dignity and authority of the court—not to vindicate a private right.[1] Thus, the proceeding was considered criminal in nature—not civil. However, the majority, avoiding established precedent, mischaracterizes this case as one of intervention by the district attorney in a private civil proceeding for the purpose of benefiting one of the litigants. In doing so, the majority effectively repudiates almost every case of this court and of the Courts of Appeal applying section 1209.

## PURPOSE OF CONTEMPT PROCEEDING

Essential to the majority's opinion is its premise that the purpose of a section 1209 proceeding is to benefit a private party. Briefly stated, the majority's argument progresses in the following manner: (1) the basis of the instant proceeding is to vindicate private rights; (2) it is therefore a civil action; (3) statutes exist specifically authorizing the district attorney to intervene in enumerated civil actions; (4) the inclusion of these specific statutory powers to the district attorney excludes all others; (5) thus, the district attorney has no authority to bring this action.

The majority's vital premise—that the *purpose* of enforcing an order by contempt is to benefit private litigants—is false. Under our Code of Civil Procedure, contempt of court is a specific criminal offense. (*Hotaling* v. *Superior Court* (1923) 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127]; *Ex parte Gould* (1893) 99 Cal. 360, 362 [33 P. 1112]; *Ex parte Hollis* (1881) 59 Cal. 405, 408; *Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146, 149 [314 P.2d 164]; *Lapique* v. *Superior Court* (1924) 68 Cal.App. 407, 411 [229 P. 1010]; Perkins on Criminal Law (2d ed. 1969)

---

[1]Section 1209 provides: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court: . . . [¶] 5. Disobedience of any lawful judgment, order, or process of the court; . . ."

p. 533.) The primary purpose of the contempt proceeding is to punish for disobedience of a court order. (*Foust* v. *Foust* (1956) 47 Cal.2d 121, 124 [302 P.2d 11]; *Ransom* v. *Superior Court* (1968) 262 Cal.App.2d 271, 276 [68 Cal.Rptr. 507]; *Little* v. *Superior Court* (1968) 260 Cal.App.2d 311, 316 [67 Cal.Rptr. 77].)

" ' "Although the alleged misconduct of the defendants occurred in the progress of a civil action, *the proceeding to punish them for such misconduct is no part of the process in the civil action . . . .*" ' " (*Killpatrick* v. *Superior Court, supra,* 153 Cal.App.2d 146, 149; quoting *Ex parte Gould, supra,* 99 Cal. 360, 362; italics added.) Nor is it of consequence that the contempt proceeding is brought in the name of the civil litigants. (*Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 477 [94 P.2d 983]; *Ex parte Ah Men* (1888) 77 Cal. 198, 200 [19 P. 380].) "[A] contempt proceeding is not a civil action but is of a criminal nature even though its purpose is to impose punishment for violation of an order made in a civil action . . . ." (*Bailey* v. *Superior Court* (1956) 142 Cal.App.2d 47, 53 [297 P.2d 795]; see also, *City of Culver City* v. *Superior Court* (1952) 38 Cal.2d 535, 541 [241 P.2d 258].)

While the contempt proceeding may have the ancillary effect of vindicating or enforcing private rights, this is not its purpose. Thus, in *H. J. Heinz Co.* v. *Superior Court* (1954) 42 Cal.2d 164, 175 [266 P.2d 5], the court explains: "In 39 California Law Review, at page 560, the author states that 'California has no provision for compensatory contempt proceedings. Civil damages may be collected in an ordinary civil action for an act otherwise a contempt.' The enforcement of an order of contempt in this state is not for the vindication of a private right but is for the maintenance of the dignity and authority of the court, and to preserve the peace and dignity of the people of the State of California." (See also, e.g., *American Fire etc. Service* v. *Williams* (1959) 171 Cal.App.2d 397, 402 [340 P.2d 644]; *Bailey* v. *Superior Court, supra,* 142 Cal.App.2d 47, 54.)

The majority cites no authority supporting its departure from the well-defined purpose of contempt. Instead, the majority now interprets the purpose of contempt as benefiting private litigants—from which it derives the conclusion that the present proceeding is civil. The majority then attempts to support its conclusion by relying exclusively on civil statutes.[2] This cannot go uncriticized.

---

[2]The majority's attempt to invoke the maxim of statutory construction—*expressio unius est exclusio alterius*—fails in the circumstances of this case. In addition to statutes

Strong public policy dictates allowing the district attorney to prosecute actions for contempt. The contempt power stands as an essential pillar of our legal system. As often recognized by this court, the power " 'is a necessary incident to the execution of the powers conferred upon the court, and is necessary to maintain its dignity, if not its very existence.' " (*In re Buckley* (1973) 10 Cal.3d 237, 247-248 [110 Cal.Rptr. 121, 514 P.2d 1201]; quoting *In re Shortridge* (1893) 99 Cal. 526, 532 [34 P. 227].) Respect for the courts is as essential to our society as is respect for the law itself.

Once judicial resolution is reached, disregard of the judgment by a dissatisfied litigant cannot be condoned. The delicate balance of our individual freedoms cannot survive limitless demands of individual interests. "Liberty can only be exercised in a system of law which safeguards order." (*Cox* v. *Louisiana* (1965) 379 U.S. 559, 574 [13 L.Ed.2d 487, 498, 85 S.Ct. 476].)

Rather than limiting prosecution of contempt to the private party and imposing its burden on the individual litigant—the resulting effect of the majority's holding—a public official should be permitted to go forward. First, because the purpose of the prosecution is to secure an important *public* interest, its economic burden should be borne by the public. (Cf. *Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716, 719 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353]; *Department of Mental Hygiene* v. *Hawley* (1963) 59 Cal.2d 247, 255-256 [28 Cal.Rptr. 718, 379 P.2d 22].) Second, the duty of enforcement must not be left solely to the whim or desire of private litigants. The burden of prosecution usually outweighing any incidental benefit to the private litigant, economic realism dictates he will not pursue the important public policy of protecting the court's dignity. In this case, the grower no doubt was more concerned with harvesting his crop than with vindicating the authority of the California courts. In response to such concerns and based on the important functions being fulfilled, this court has allowed persons not parties to the original action to prosecute actions for contempt. (See, e.g., *Bridges* v. *Superior Court, supra,* 14 Cal.2d 464, 477; *McFarland* v. *Superior Court* (1924) 194 Cal. 407, 423 [228 P. 1033].) The proceeding being criminal in nature for the maintenance and dignity of the court, and no reason existing to carve an exception from his normal prosecutor-

noted by the majority granting the district attorney express authority to appear in specified civil areas, others exist specifically restricting his authority. (See Gov. Code, § 26540 et seq.) Because specific statutes both authorize and restrict his duties, application of the statutory maxim reaches different results depending upon which set of statutes is used. Accordingly, the majority's theory of statutory construction is inappropriate.

ial responsibilities, the district attorney, subject to the court's regulation, is the appropriate public official to prosecute these contempts.

### PROSECUTOR'S DISCRETION TO SEEK LESSER PENALTIES

Additional to its result, the majority "holds" that the district attorney lacks power to force the defendants into reduced punishment at the cost of a "cherished protection." (*Ante,* p. 241.) The majority, while recognizing that disobedience of a court order violates both Code of Civil Procedure section 1209 and Penal Code section 166,[3] forces the district attorney to proceed under the Penal Code, disallowing him discretion—even in the interests of justice—to seek the lesser penalty provided by the Code of Civil Procedure.

I cannot agree that when the district attorney has the alternative of charging two separate offenses for the same act, one providing a trial by jury but a potentially greater penalty, he must charge the offense affording the right to jury.[4] The majority's requirement would frustrate legislative intent providing for two separate methods of statutory enforcement. In false advertising cases, for example, the prosecutor is given the choice of prosecuting under either Business and Professions Code section 17534 (a misdemeanor carrying a possible jail sentence of six months) or section 17536 (providing only for civil penalties (fine)). Under section 17534 a defendant is entitled to a jury trial; however, under section 17536 no such right exists. (*People* v. *Witzerman* (1972) 29 Cal.App.3d 169, 176 [105 Cal.Rptr. 284].) Surprisingly, the majority would have the defendant mandatorily charged with the criminal offense and its attendant peril of loss of liberty instead of a simple fine.

---

[3]Punishment for violation of Code of Civil Procedure section 1209 is a maximum fine of $500 or a maximum of five days in jail or both. (Code Civ. Proc., § 1218.) Punishment for violation of Penal Code section 166, is a maximum of $500 or a maximum of six months in the county jail. (Pen. Code, § 19.)

Penal Code section 166 is not intended to take away from the court contemned the power to punish a violator of its orders, but is intended rather to provide an additional remedy. Both the Code of Civil Procedure and the Penal Code remedies were intended to be cumulative because each remedy is for a different offense, though the two offenses arise from the same act. (*In re Morris* (1924) 194 Cal. 63, 69 [227 P. 914].)

[4]If, however, the majority's statement means that the defendants are entitled to a jury trial when an alternative offense which could have been charged entails the right, then it is beyond the majority's own limitation that: "We therefore need intimate no views as to the necessity of a jury trial . . . in cases of . . . contempt . . . ." (*Ante,* p. 235, fn. 7.) Moreover, any suggestion that lesser penalties may not warrant lesser rights would be contrary to existing authority. (See, e.g., *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444]; *Dyke* v. *Taylor Implement Co.* (1968) 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472].)

The district attorney has and should continue to possess the power to charge a lesser offense when facts warrant such discretion. "It is the general rule that the duty to charge persons with crimes rests with the district attorney and courts do, and should continue to, exercise restraint in interfering with the free exercise of discretion . . . ." (*Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8, 12 [106 Cal.Rptr. 89]; see also *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752, 757 [6 Cal.Rptr. 813].) Here the district attorney decided in his discretion that it would be more appropriate to seek the lesser penalties under the Code of Civil Procedure rather than to pursue the potentially greater penalties under the Penal Code.

There being no apparent abuse of discretion, no writ should issue.

McComb, J., concurred.