TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|                                             |   |                       |
|---------------------------------------------|---|-----------------------|
| OPINION                                     | : |                       |
|                                             | : | No. 96-103            |
| of                                          | : |                       |
|                                             | : | June 20, 1996         |
| DANIEL E. LUNGREN                           | : |                       |
| Attorney General                            | : |                       |
|                                             | : |                       |
| ANTHONY S. DA VIGO                          | : |                       |
| Deputy Attorney General                     | : |                       |
|                                             | : |                       |

_____

THE HONORABLE ROBERT G. BEVERLY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Is a voluntary nonprofit or proprietary agency provider of in-home supportive services performed by the agency's employees, which does not have a contract with a county to perform such services, eligible to be paid for such services by the State of California?

CONCLUSION

A voluntary nonprofit or proprietary agency provider of in-home supportive services performed by the agency's employees, which does not have a contract with a county to perform such services, is not eligible to be paid for such services by the State of California.

ANALYSIS

The in-home supportive services program (IHSS) of the Department of Social Services (DSS) provides supportive services to aged, blind, and disabled persons who are unable to perform such services themselves and who could not remain safely in their homes unless the services were so provided. (Welf. & Inst. Code, §§ 12300-12314.)[1]  The program, which is partly funded by federal block grants, is administered by county welfare departments under the supervision of DSS.  (§ 12306,

---

[1]All references hereafter to the Welfare and Institutions Code are by section number only.

subd. (b); 42 U.S.C. §§ 1397-1397e.) The services, which the recipients would normally perform for themselves except for their functional limitations, include personal care services, heavy cleaning, medical appointment accompaniment, yard hazard abatement, and paramedical services. (See 77 Ops.Cal.Atty.Gen. 153 (1994).)

The present inquiry is whether a private nonprofit or commercial agency which does not have a contract with a county to perform such services is eligible to be paid by the state for the services provided by their employees. We conclude that state funds are not available under these circumstances.

Section 12302 is the primary statute requiring our analysis. It provides in pertinent part as follows:

"Each county is obligated to ensure that services are provided to all eligible recipients during each month of the year in accordance with the county plan.

"In order to implement such a plan, an individual county may hire homemakers and other in-home supportive personnel in accordance with established county civil service requirements or merit system requirements for those counties not having civil service, or may contract with a city, county, or city and county agency, a local health district, a voluntary nonprofit agency, a proprietary agency, or an individual or make direct payment to a recipient for the purchase of services."

In examining the language of section 12303, we note that with respect to a statutory grant of authority, there are two implied negatives. First, no power may be exercised which is in excess of the granted authority. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236-238; 76 Ops.Cal.Atty.Gen. 126, 129-130 (1993); 71 Ops.Cal.Atty.Gen. 266, 274 (1988).) Second, where the mode by which a power may be exercised is prescribed, the mode prescribed is the measure of the power. (*People* v. *Zamora* (1980) 28 Cal.3d 88, 98; *Wildlife Alive* v. *Chickering*, *supra*, 18 Cal.3d at 196; 76 Ops.Cal.Atty.Gen. 86, 89 (1993); 71 Ops.Cal.Atty.Gen., *supra*, at 274.)

Section 12302 both grants a power and prescribes the mode of its exercise. Specifically, a county is granted the authority to ensure that services are provided to all eligible recipients in accordance with the county plan. The county may implement such a plan in any of the prescribed modes: (1) it may hire its own personnel; (2) it may contract with another local public agency, a local health district, a voluntary nonprofit agency, a proprietary agency, or an individual; or (3) it may make direct payment to a recipient for the purchase of the services.

Nothing in section 12302 authorizes the payment of funds for the performance of services by a voluntary nonprofit agency, a commercial agency, or an individual in the absence of a contract with the county. On the contrary, the only exception to contracting with a provider of services is direct payment to the recipient of services.

In interpreting section 12302, we are no more at liberty to add provisions to what is therein declared in definite language than we are to disregard any of its express provisions. (See *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097; 78 Ops.Cal.Atty.Gen. 247, 252 (1995).)

From an examination of the statutory scheme as a whole, it appears that the contractual relationship required in section 12302 between the county and a vendor, such as a nonprofit or proprietary employer of service providers, serves a legitimate regulatory purpose. Section 12302.1, subdivision (a), for example, provides in pertinent part as follows:

"The regulations promulgated by the department shall also establish standards governing acceptable contract provisions, the methods used to advertise, procure, select and award contracts, and the procedures used to amend, renew, or extend an existing contract with the same contractor including, in addition to rate changes, any other change in other terms of the contract.

"The county may temporarily extend the contract in accordance with the department's regulations in order to assure continuity of service, quality of care, or the competitive bid process.

"All contracts awarded, extended or renewed pursuant to this section and all amendments to the contracts shall be subject to the prior review and approval of the department. No contract shall take effect until approved in writing by the State Department of Social Services."

Section 12302.1, subdivision (b), further provides that prior to accepting or renewing an existing contract, the county board of supervisors shall conduct a hearing which shall be at a regularly scheduled meeting and open to the public. Section 12302.4 provides that the county may evaluate all or any contract bidders to determine their responsibility, including all of the following: whether the bidder (1) possesses adequate financial resources, (2) is able to comply with the proposed delivery and performance schedule, (3) has any record of unsatisfactory performance, (4) has any record of lack of integrity or poor business ethics, and (5) is otherwise qualified and eligible to receive an award under applicable statutes and regulations. Nothing in this legislative scheme suggests that a nonprofit or proprietary employer of service providers may proceed or be eligible for payment for services rendered in disregard of its provisions.

With respect to a direct payment to an individual recipient-employer of services, section 12302.2, subdivision (a), provides in part:

"If the state or a county makes or provides for direct payment to a provider chosen by a recipient or to the recipient for the purchase of in-home supportive services, the department shall perform or assure the performance of all rights, duties and obligations of the recipient relating to such services as required for purposes of unemployment compensation, unemployment compensation disability benefits, workers' compensation, federal and state income tax, and federal old-age survivors and disability insurance benefits."

It has been suggested that section 12302.2, notwithstanding all the statutes to which it is related in the legislative scheme, provides in its literal construction for the "direct payment to a provider chosen by a recipient," and that a "provider" includes a nonprofit or proprietary employer of service providers.  In rejecting this suggestion, we may rely upon well established rules of statutory construction.  "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'"  (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.)  "A statute must be construed `in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.'"  (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1009; see 78 Ops.Cal.Atty.Gen. 247, 251 (1995).)

Section 12302.2 refers to "direct payment" for in-home supportive services.  The only reference in section 12302 to "direct payment" is to an individual recipient for the purchase of services.  Further, the reference in section 12302.2 to a "provider chosen by a recipient" has no apparent connection with a provider selected and assigned by an agency employer.  Finally, a nonprofit or proprietary employer is usually referred to as a "contractor" (§ 12302.1) or "bidder" (§ 12302.4).

More importantly, in any event, is the fact that section 12302.2 is concerned with the performance by DSS of the "rights, duties and obligations of the recipient relating to such services," which rights, duties, and obligations pertain only to the recipient as an employer.  Thus section 12302.2 also provides that "Contributions, premiums, and taxes shall be paid or transmitted on the recipient's behalf as the employer . . . ."  Obviously, the unemployment compensation, disability benefits, workers' compensation, taxes, and social security benefits of a service provider employed by a nonprofit or proprietary employer are not obligations to be performed by the state.

Accordingly, it is concluded that a voluntary nonprofit or proprietary agency provider of in-home supportive services performed by the agency's employees, which does not have a contract with a county to perform such services, is not eligible to be paid for such services by the state.

* * * * *