TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION : | |
| : | No. 97-706 |
| of : | |
| : | October 3, 1997 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| ANTHONY M. SUMMERS : | |
| Deputy Attorney General : | |
| : | |

THE HONORABLE THOMAS McCLINTOCK, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. When are an official map and legal description of the boundaries of a proposed school district reorganization required to be prepared and filed?

2. Which party or entity is responsible for the costs of preparing and filing an official map and legal description of the boundaries of a proposed school district reorganization?

CONCLUSIONS

1. The preparation and filing of an official map and legal description of the boundaries of a proposed school district reorganization are required only after the reorganization has been approved by the voters.

2. The county board of supervisors is responsible for the costs of preparing and filing an official map and legal description of the boundaries of a proposed school district reorganization after it has been approved by the voters.

ANALYSIS

The reorganization of school districts (Ed. Code, §§ 35500-35785) **Footnote No. 1** includes the creation of one or more new school districts from the territory of an existing district. (§ 35511.) Such a change may be initiated by the residents of the area by filing with the county superintendent of schools a petition signed by a percentage of the registered voters in the affected territory. Section 35700 provides:

"An action to reorganize one or more districts is initiated upon the filing, with the county superintendent of schools, of a petition to reorganize one or more school districts signed by any of the following:

"(a) At least 25 percent of the registered voters residing in the territory proposed to be reorganized if the territory is inhabited. Where the petition is to reorganize territory in two or more school districts, the petition shall be signed by at least 25 percent of the registered voters in that territory in each of those districts.

"(b) A number of registered voters residing in the territory proposed to be reorganized, equal to at least 8 percent of the votes cast for all candidates for Governor at the last gubernatorial election in the territory proposed to be reorganized, where the affected territory consists of a single school district with over 200,000 pupils in average daily attendance and the petition is to reorganize the district into two or more districts.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

If the petition contains a sufficient number of signatures, a hearing is held. (§ 35722.) Up to three persons are to be designated as "chief petitioners" for the purpose of receiving notices of any public hearings. (§ 35701.) After the public hearings and all required approvals have been obtained, an election may be held. (§§ 35710.51, 35722.)

Section 35703 provides that a petition initiating a school district reorganization may include the provisions found in sections 35730-35738. The latter statutes cover such topics as the governing law for the new school district, number of board members, territory in which the election shall be held, whether trustees will represent areas or the entire district, computation of revenue limits, division of obligations, property and indebtedness, and election procedures for the first governing board. However, there is no statutory mandate that the petition contain any of these provisions. Indeed, there are no specific directives as to the contents of a school district reorganization petition. This is made evident by the fact that the county committee on school district organization (see § 35720) may add to the petition any appropriate provisions specified in sections 35730-35738 "which were not included in the petition as filed." (§ 35705.5, subd. (a).)

Nevertheless, it may reasonably be seen that the petition must identify the type of reorganization proposed and the territory to be reorganized with sufficient specificity so that (1) a determination may be made as to whether the petition contains a sufficient number of signatures from the area's residents and (2) voters will be informed as to the nature of the proposed reorganization at the time of the election.

1.      Preparing and Filing an Official Map and Legal Description

The first question to be resolved concerns the date when an official map and legal description of the boundaries of a proposed school district reorganization must be prepared and filed. Are the petitioners of a reorganization required, for example, to furnish a legal description of the proposed boundaries prior to circulating the petition? We conclude that an official map and legal description are not required until after the voters have approved the reorganization.

As noted above, the Education Code provisions dealing with petitions for reorganizations of school districts do not require any specific matters to be included in a petition, and make no reference to preparing maps or a legal description of the area proposed for reorganization. We must therefore determine whether any other statutory scheme requires preparation of a map or legal description as a condition precedent to filing a petition for a school district reorganization or which sets any other deadline for such preparation.

We first examine the provisions of Government Code sections 54900-54916.5, which deal with changes in the boundaries of cities, districts, and other areas where a special tax assessment is carried on the county assessment roll for property tax purposes. Government Code sections 54900 and 54901 require the filing of a "statement," in the form required by the State Board of Equalization, that describes the changes

filing of a "statement," in the form required by the State Board of Equalization, that describes the changes and which must "include a legal description of said boundaries and a map or plat indicating the boundaries." (Gov. Code, § 54901, subd. (a).) The statement must be filed "[o]n or before December 1 of the year immediately preceding the year in which the assessments or taxes are to be levied" (Gov. Code, § 54902), and the proposed changes are not effective for assessment or taxation purposes until the statement is filed (Gov. Code, § 54903).

The foregoing Government Code provisions regarding the filing of statements for property tax purposes are applicable to school district reorganizations. Section 35765 explicitly requires compliance with this statutory scheme. **Footnote No. 2** However, the filing of a map and legal description is not required until *after* the school district reorganization election. Section 35765 states:

"After the board of supervisors receives a proper certificate of election or other proper evidence that an action to organize or reorganize school districts has been approved as provided by law, the board of supervisors shall make an order to create, change, or terminate school districts as may be required by the action and establish or reestablish the boundaries of the districts affected by the action. The order shall be entered in the county's record of school districts.

"If the action results in the creation of a district or a change of district boundaries of the type described in Section 54900 of the Government Code, the order of the board of supervisors shall include the legal description of each district created or changed in the action and, immediately after making the order, the board of supervisors shall cause a copy of the order and a map or plat indicating the boundaries established or reestablished for each district affected by the order to be filed as required by Chapter 8 (commencing with Section 54900) of Part 1 of Division 2, Title 5 of the Government Code."

Thus, compliance with Government Code section 54900 does not necessitate the preparation of any map or legal description prior to circulating a petition for reorganization of a school district; rather, section 35765 and Government Code sections 54900-54916.5, as well as section 35534, require such documents to be prepared only if the reorganization is approved as provided by law. **Footnote No. 3**

We reject the suggestion that a separate statutory scheme, Government Code sections 58850-58861, is applicable to the circulation of a petition to reorganize a school district. This statutory scheme generally relates to changes in the boundaries of any "district exercising functions that are, or may be, supported by taxes . . . levied on property within the district . . ." (Gov. Code, § 58850, subd. (b)) and requires that "a map showing the boundaries of the territory involved and . . . a specific detailed legal description of the boundaries of such territory" must be submitted to the county surveyor prior to circulating the petition (Gov. Code, § 58852). The county surveyor and county assessor review the boundary description contained in the proposal (Gov. Code, § 58851), after giving notice to all cities, districts, and the county having any land within the proposed area (Gov. Code, § 58855). The county surveyor may hold a public hearing (Gov. Code, § 58857) to consider whether the proposed boundaries are definite and conform with lines of ownership as well as other similar matters of public interest (Gov. Code, § 58856). "If the proponents do not accept the county surveyor's recommendations as contained in his report, they shall file a statement of reasons with the legislative body having jurisdiction to conduct the appropriate proceedings." (Gov. Code, § 58860.) "Before acting upon any proposal, the legislative body having jurisdiction shall consider the report of the county surveyor and give it such weight as in its judgment the public interest requires." (Gov. Code, § 58861.)

None of the provisions of this legislative scheme are referenced in the Education Code relating to school district reorganizations. Rather, as we have seen, the Education Code requires compliance with a separate statutory scheme, Government Code sections 54900-54916.5, dealing with the preparation and filing of official maps and legal descriptions. We do not view the role of the county surveyor under the

terms of Government Code sections 58850-58861 as appropriate to school district reorganizations, given the Legislature's detailed requirements contained in sections 35500-35785 that include the additional requirements specified in Government Code sections 54900-54916.5.

We note also that Government Code sections 58850-58861 may be read in conjunction with Government Code sections 58000-58200, the District Organization Law, dealing with the same subject matter and from which school districts are exempt. (See Gov. Code, §§ 58002, 58004; 21 Ops.Cal.Atty.Gen. 197 (1953).) **Footnote No. 4**

We believe that the more specific provisions of sections 35534 and 35765 control the more general provisions of Government Code sections 58850-58861. (See Code Civ. Proc., § 1859; *Woods v. Young* (1991) 53 Cal.3d 315, 325 ["`specific provision relating to a particular subject will govern a general provision'"].) Had the Legislature intended the provisions of Government Code section 58850-58861, in which the official map and legal description are prepared and filed before circulating the petition, to be applicable to school district reorganizations, it could easily have so provided. (See *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 237-238 ["the Legislature's clear demonstration that it knows how to grant . . . power when it wishes to do so"].) Instead, it expressly referred to a different statutory scheme in which the map and description are prepared and filed only after the voters have approved the change in boundaries. We have examined in detail the legislative history of sections 35500-35785's requirements dealing with the preparation and filing of official maps and legal descriptions of school district reorganizations. (Stats. 1980, ch. 1192, § 2.) Nothing therein suggests that the county surveyor is to have a role in such boundary changes. We may assume that the Legislature was aware of the earlier statutory scheme (Stats. 1965, ch. 586, § 12) and chose not to incorporate it as it did Government Code sections 54900-54916.5.

Finally, we observe that our interpretation of the requirements of sections 35500-35785 is consistent with that of the Department of Education. "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference. [Citation.]." (*Dix* v. *Superior Court* 1991) 53 Cal.3d 442, 460.)

While a petition to reorganize a school district must, prior to public hearings or an election, reasonably identify the territory to be reorganized, we believe this need not be accomplished by way of a legal description. Indeed, a reference to streets or prominent geographic features may provide more meaningful notice to voters than a metes and bounds legal description. A common description may well be adequate in allowing the appropriate officials to determine whether the requisite number of voters have signed the proposed reorganization petition.

We thus conclude in answer to the first question that the preparation and filing of an official map and legal description of the boundaries of a proposed school district reorganization are required only after the reorganization has been approved by the voters.

2.        Designating Responsibility for Costs

The second question concerns the party or entity responsible for the costs of preparing an official map and legal description of a school district reorganization, once it has been approved by the voters. We conclude that the county board of supervisors is responsible for such costs.

Section 35765 is again the controlling statute. It directs the board of supervisors to "make an order to create, change, or terminate school districts" and specifies that such order "shall include the legal description of each district created or changed." Section 35765 requires the board of supervisors to "cause . . . a map or plat indicating the boundaries established or reestablished for each district . . . to be filed."

We find no ambiguities in the terms of section 35765. The responsibility for preparing an order, including a description of the new boundaries, is upon the board of supervisors, who must also file the

order, including a description of the new boundaries, is upon the board of supervisors, who must also file the official map of the new district. Since no other parties or entities are mentioned in the statutory language, we believe that the costs of preparing and filing the legal description and map are necessarily to be borne by the board of supervisors as incidental to this legislative mandate.

We conclude in answer to the second question that the county board of supervisors is responsible for the costs of preparing and filing an official map and legal description of the boundaries of a proposed school district reorganization after it has been approved by the voters.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the Education Code are by section number only.

**Footnote No. 2**
In addition, section 35534 makes the effective date of a school district reorganization "subject to compliance with Section 5400 of the Government Code." Government Code section 5400 defines "public body" as "any county, city and county, city, public district, public authority or other public corporation which is authorized to issue bonds" for purposes of levying a tax or assessment to cover the principal and interest on unsold bonds. It has no relevance to reorganizations of school districts or any other districts. The obvious typographical error contained in section 35534, however, may be corrected by examining the statute's legislative history. Section 35534 was enacted in 1980 (Stats. 1980, ch. 1192, § 2) at the same time as section 35765 (Stats. 1980, ch. 1192, § 3). The latter statute, dealing with the same subject matter, refers to "Section 54900 of the Government Code," and that it is undoubtedly what the Legislature intended in its reference in section 35534. We are to construe statutes "to make them workable and reasonable" and "to avoid an absurd result." (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239.) Also, we may harmonize the provisions of sections 35534 and 35765 by concluding that the former statute requires compliance with the terms of Government Code section 54900 when school districts are reorganized. "[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

**Footnote No. 3**
Moreover, we note that Government Code section 54903.1 provides:

> "When a statement of the creation or change of boundaries of a school district and a map or plat thereof is required to be filed with the State Board of Equalization, the authority required to file the statement and map or plat shall, at the same time, file a copy of the statement and map or plat with the Superintendent of Public Instruction and the county superintendent of schools of the county in which the school district is located."

There would be no need to file the requisite maps with the superintendent of public instruction and the county superintendent of schools after the election if the maps were required to be prepared and submitted prior to circulating the reorganization petition. All of these statutes may be read together and harmonized (see *People* v. *Hull* (1991) 1 Cal.4th 266, 272; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1009) in concluding that a legal description is not required until after the reorganization has been approved by the voters.

**Footnote No. 4**
School districts are exempt as well from the requirements of the Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, §§ 56000-57385). (Gov. Code, § 56063, subd. (a)(4).)