[Civ. No. 32705.   Second Dist., Div. One.   May 17, 1968.]

KARL K. RANSOM, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; VIOLET IONE RANSOM, Real Party in Interest.

272

. . ."                                                                        .

Hill, Farrer & Burrill, William M. Bitting and William McD. Miller for Petitioner.

No appearance for Respondent.

Ward & Heyler and Lawrence H. Eisenberg for Real Party in Interest.

McCOY, J. pro tem.*—This is a proceeding to review an order of the Superior Court for Los Angeles County adjudging petitioner guilty of contempt of court for his refusal to answer a question propounded to him in supplemental proceedings after judgment in the case of Ransom v. Ransom, number WED 9652, now pending in said court, in which action he is the defendant.

In February 1967, the respondent court entered an interlocutory judgment of divorce in favor of the plaintiff Violet Ransom. This judgment provides in part that defendant pay certain sums for her support, together with the amounts due on their income tax for 1965, and the value of certain carpeting, and the cost of replacing certain furniture. Based on a declaration of plaintiff's attorney alleging defendant's failure to pay some $11,800 owing under the judgment, plaintiff obtained an order requiring defendant to appear before a referee of the court on January 17, 1968, under section 714 of the Code of Civil Procedure to answer questions concerning his property. Plaintiff alleges in her petition to this court that during the first part of the hearing which was conducted informally in the attorney's conference room, defendant refused to answer a question whether one Jones, a client then on trial in the United States District Court, had paid him a retainer on the ground that the question called for a confidential communication between attorney and client and was privileged. She then alleges that the hearing was continued before the referee and that, after defendant was sworn, he was again asked whether his client Jones, had paid him a retainer, that he again refused to answer the question on the same ground. The only record of these proceedings which can be found in the record before us is the minute order of that day which, so far as we are concerned here, reads: "Citee is sworn, examined in private and asserts attorney-client privilege in objecting to answer certain questions. The court overrules the objection but citee refuses to answer the questions. The supplemental examination of citee KARL K. RANSOM, being personally present and hearing this order pronounced, is continued to 9 a.m. April 3, 1968 in Department West J. Said citee is ordered to return at that time without further order or notice."

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

On January 22, 1968, the court issued an order requiring defendant to show cause on January 25 why he should not be adjudged guilty of contempt of court "for wilfully disobeying the Order heretofore made on January 17, 1968," as more fully described in the declaration of Lawrence Eisenberg, one of plaintiff's attorneys. The alleged contempt is set forth by Mr. Eisenberg in his declaration as follows: "8. In the presence of Commissioner Alexander, the following question (in substance or effect) was put to defendant by declarant: 'You have stated that you represent an individual, identified by you as Mr. Jones, in a criminal proceeding in the United States District Court, identified as *United States* v. *Erickson, et al*, and that Mr. Jones is one of the defendants in that matter. Has Mr. Jones paid you a retainer in connection with that matter?' Defendant refused to answer the question, stating that he was an attorney at law and that the question called for privileged information. Defendant also stated that he would not answer to any question which would be related to any fees owed or paid to him by any client, past or present, whether such client had been identified as having been represented by defendant in the public records or not. 9. Commissioner Alexander read to defendant from Section 800(2) of Witkin, *California Evidence* (1966), and *Evidence Code*, Section 954. He then overruled defendant's objections to the question, and related questions, and ordered defendant to answer. Defendant refused to answer and Commissioner Alexander advised declarant to proceed in accordance with Code of Civil Procedure, Section 721."

The contempt proceedings were heard on January 25, at which time defendant appeared by his attorney who filed his own declaration in opposition to the order to show cause. At the conclusion of the hearing the following order was entered on the minutes of the court: "Court states it will consider the declaration of the parties and/or counsel as direct testimony and also has considered all documentations filed. Defendant is sworn and examined pursuant to 776 Evidence Code by the plaintiff. Defendant is in contempt of court for failure to answer questions as ordered. ■ [See fn. 1] Defendant is sentenced to 5 days county jail, execution of sentence is stayed until January 29, 1968 at noon."[1]

Defendant contends that the order of January 25, 1968, ajudging him guilty of contempt is void in that, by compel-

---

[1]Evidence Code, section 776, supersedes but restates the substance of Code of Civil Procedure, section 2055, as that section has been interpreted by the courts.

ling him to answer "said questions," the court would require him to violate his obligation as an attorney-at-law to claim the attorney-client privilege with respect to confidential communications of his client. By their pleadings in this proceeding the parties raise but one question: whether the amount of a fee paid by a client to an attorney is a confidential communication which is protected from disclosure by reason of the lawyer-client privilege. ■■■ We do not reach that question because in our opinion, for reasons which appear on the face of the record, the order is void.

Section 721 of the Code of Civil Procedure provides that "If any person, party or witness disobey an order of the referee, properly made, in the proceedings before him under this chapter [relating to proceedings supplemental to execution], he may be punished by the court or judge ordering the reference, for a contempt." ■■■ The rules by which the validity of the court's adjudication that a person or party is in contempt were recently stated by this court in *Bone* v. *Superior Court*, 245 Cal.App.2d 972 [54 Cal.Rptr. 406]. We there said: "In a proceeding such as this to have petitioner adjudged guilty of an indirect contempt because of an alleged violation of an order of the court, he could not be deprived of his property or liberty 'without evidence having been offered against him in accordance with the established rules, and an opportunity to cross-examine those whose evidence is given against him, and the opportunity to present evidence in his own behalf.' (*Collins* v. *Superior Court*, 145 Cal.App.2d 588, 594 [302 P.2d 805].) ■■■ 'All elements of charged contempt must be averred in affidavit of accuser and must be developed in the proofs.' (*In re Ny*, 201 Cal.App.2d 728, 731 [20 Cal.Rptr. 114].)" (Pp. 973-974.)

■■■ It does not require the citation of any authority to support the rule that in a contempt proceeding the burden is on the party seeking to have a person adjudged guilty of contempt to establish his charges against the alleged contem-

(Evid. Code, § 776, Comment—Law Rev. Com.) In the case at bench the respondent court was in error in permitting the plaintiff to call defendant, who was the respondent in the contempt proceedings, as a witness. "This section [Code Civ. Proc., § 2055] applies to parties in a civil action and its provisions may not be invoked in favor of a person prosecuting a contempt proceeding as against the contemner. Contemner stands in a position similar to that of a defendant in a criminal action and he may not be compelled to give testimony against himself." (*Oliver* v. *Superior Court*, 197 Cal.App.2d 237, 240 [17 Cal.Rptr. 474].) In any event, the court should not have permitted him to testify against himself without advising him of his constitutional right to remain silent. (*Id.*)

ner by competent evidence. ■ When it is alleged, as here, that the party is in contempt for having disobeyed an order "properly made" by a referee (Code Civ. Proc., § 721), it is incumbent on the party who makes such charges to establish at the outset that the referee made a proper order in clear, specific and uniquivocal language requiring the party charged to do a specific act. ■ As the court said in *Foust* v. *Foust*, 47 Cal.2d 121, 124-125 [302 P.2d 11]: "Contempt proceedings are criminal in nature, and the prescribed procedural safeguards must be accorded the alleged contemner. (*City of Culver City* v. *Superior Court*, 38 Cal.2d 535, 541 [241 P.2d 258].) ■ The prime purpose of such proceedings is punishment for disobedience of a valid order directing performance of a specified act. ■ Liability for such drastic punishment 'should not rest upon implication or conjecture' but rather upon an order expressing in 'clear, specific and unequivocal' language the act required. (*Plummer* v. *Superior Court* [20 Cal.2d 158, 164 (124 P.2d 5)].) It was therefore said in the *Flynn* case [42 Cal.2d 55 (265 P.2d 865)] that 'greater certainty and clarity may be required to support [contempt] proceedings than are necessary to support other judgment remedies. . . .' (*Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 60.)''

■ As we have pointed out above, there is no record in the files of the respondent court of any order made by the referee requiring defendant to answer any questions put to him during his examination. All that is recorded in the minutes of the court is the statement that "The court overrules the objection but citee refuses to answer the questions." Furthermore, at this point, we are left to forbidden implication or conjecture as to what questions were asked and as to what questions defendant refused to answer.

The record of the contempt proceedings resulting in the order under review is equally devoid of any other support for the conclusion of the court that "defendant is in contempt of court for failure to answer questions as ordered." That conclusion is unsupported by any finding as to what questions were asked in the proceeding before the referee or what questions he refused to answer, or, as noted above, that he was ordered by the referee to answer any questions and that he refused to do so, nor was there any evidence before the court which would have supported any such findings.

The transcript of the proceedings before the court on January 25, 1968, which has been filed with this court demon-

strates a total disregard of the established rules of procedure in such matters. ■ To begin with, the court stated that it had "read the pleadings and supporting matters filed by both sides," but neither the declaration filed in support of the order to show cause nor the declaration of defendant's attorney in opposition thereto were offered or received in evidence. These declarations could not be considered as anything more than the pleadings in the case unless and until they were offered and received in evidence. (*Bone* v. *Superior Court*, 245 Cal.App.2d 972, 974 [54 Cal.Rptr. 406].) This error is not cured by the recitation in the minutes reading: "Court states it will consider the declaration of the parties and/or counsel as direct testimony and also has considered all documentation filed."

■ No other evidence was offered by plaintiff in support of the charges against defendant. While defendant's attorney was correct in stating that the referee did not find defendant in contempt because he did not have the power to do so, it is apparent that neither party had any idea of the procedure to be followed in the contempt proceeding then being heard. As to that, defendant's attorney stated: "It is my understanding that it is [plaintiff's] obligation to call the defendant to the stand and ask these questions of him again before he can be held in contempt. At that time I will make my other objections which I have a right to do right to the Supreme Court of the United States and that is why the points and authorities raised other objections at this time. I attempted to make these objections before the referee, and he was more concerned with the attorney-client objection at that time. We did have some discussion and did discuss it." When the court then said "Proceed," plaintiff's attorney called defendant on plaintiff's behalf and examined him not only as to the fees paid to him by his client, Jones, but also as to a number of other things having no bearing on the narrow issue before the court.

That the parties and the court were aware of the issue being heard is shown by the following colloquy: "Q [By Mr. Eisenberg, attorney for plaintiff] Did you on January 17 appear—— MR. BITTING [Attorney for defendant]: I will stipulate to that, Mr. Eisenberg. THE COURT: There is no question yet. Did you appear before Alexander and refuse to answer certain questions and were ordered to do so by the commissioner? MR. EISENBERG: I will go directly into it if I may. BY MR. EISENBERG: Q Mr. Ransom, are you representing a defendant in a criminal matter in the United States

District Court entitled United States of America versus Erickson and others? A Yes. Q Is the name of that defendant Mr. Jones? A Yes. Q Has Mr. Jones paid a retainer in that matter? Mr. BITTING: I will object to that. What do you mean by a retainer? THE COURT: Call it whatever you will. I don't wish to engage in a discussion of semantics. Has he paid you anything? THE WITNESS: Yes, sir. BY Mr. EISENBERG: Q What sum has he paid you? A The matter presently on trial is a fraud matter, and I can't answer that question. Q You can't or you won't? A I won't.'' Thereupon, on *voir dire*, Mr. Bitting established that the defendant refused to answer because of his claim that the matter of the fee paid to him by Mr. Jones is a matter within the attorney-client privilege. From that point on the discussion with the court as well as the testimony of the defendant related to plaintiff's right to see defendant's books, and the reasons why defendant had not made payments to plaintiff as required by the judgment. Toward the end of this digression Mr. Bitting said it was his understanding that the only question before the court is whether defendant "is in contempt for refusing to tell how much Mr. Jones paid him" to which the court replied, "That's right." Then, after some further discussion with respect to defendant's right to rely on the attorney-client privilege, the matter was submitted, whereupon the court announced, "Defendant is found in contempt for failure to answer the questions," sentenced him to five days in the county jail and granted a stay to enable him to seek relief from this court.

It is obvious from our analysis of the record that neither the plaintiff nor the court was concerned with establishing that defendant was guilty of contempt for failing to answer certain questions on his examination before the referee. It is equally obvious that in the absence of any evidence in support of those charges and of any findings based on competent evidence, the conclusion of the court that defendant was guilty of contempt "for failure to answer the questions" is not supported by the record.[2]

The order of January 25, 1968, adjudging petitioner guilty of contempt is annulled.

Wood, P. J., and Fourt, J., concurred.

[2] We note, in passing, that even when defendant refused at the hearing on the contempt proceedings to answer plaintiff's question as to whether his client, Mr. Jones, had paid him a retainer, the court did not order him to answer that question, nor, so far as we can ascertain, did the court purport to find him guilty of contempt for his failure to do so.