[Civ. No. 25084. Fourth Dist., Div. Two. Nov. 6, 1981.]

BARRY ELLERBROEK, Plaintiff and Respondent, v. SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

352

COUNSEL

Wagner & Wagner, John J. Wagner and Patrick D. Sisneros for Defendants and Appellants.

Daniel B. Haueter for Plaintiff and Respondent.

OPINION

ZIEBARTH, J.*—

I

STATEMENT OF THE CASE

This is an appeal by the Saddleback Valley Unified School District (hereinafter the Appellant District) and the Board of Education of the Saddleback Valley Unified School District (hereinafter the Appellant Board), from the superior court's judgment (dated and filed on Sept. 22, 1980, and entered on the same date). That judgment granted a peremptory writ of mandate (under Code Civ. Proc., § 1085) ordering the reinstatement for the 1980-1981 school year of Barry Ellerbroek (hereinafter referred to as the Respondent) to his former position as principal of LaPaz Intermediate School, where he had been principal for the preceding six years. The lower court found that he had been unlawfully reassigned to the district office position of supervisor of special projects.

In addition to ordering the Respondent's reinstatement, the lower court also awarded him all of his attorney fees pursuant to Government Code section 800 and Code of Civil Procedure section 1021.5.

As part of the aforementioned judgment, the court stated: "Pursuant to the powers conferred upon this Court by Code of Civil Procedure Section 1110b, it is directed that an appeal of this matter shall not operate as a stay of execution of the reinstatement of Petitioner to his position as Principal of LaPaz Intermediate School in Respondent SCHOOL DISTRICT, as such a stay would cause irreparable damage to Petitioner's profession in school administration."[1]

---

*Assigned by the Chairperson of the Judicial Council.

[1]Judge Prenner apparently employed the language quoted above with the realization that because the judgment referred only to reinstatement for the 1980-1981 school year which would terminate on the last day of June 1981 (Ed. Code, § 37200), that without such language the judgment would be meaningless because the school year would no

Subsequent to the judgment being signed, filed, and entered on September 22, 1980, a timely notice of appeal was filed by appellants on September 30, 1980.

## II

### STATEMENT OF FACTS

The Respondent, Barry Ellerbroek, has been employed by the Saddleback Valley Unified School District as a certificated employee serving in a number of different positions in the past 15 years. He served originally as a classroom teacher for a period of four years and attained tenure in the Appellant District as a classroom teacher. In 1975 Respondent was promoted to the position of principal at the LaPaz Intermediate School. That position required both a teaching and an administrative credential issued by the State Department of Education. The Respondent served in that capacity during the 1979-1980 school year.

During the month of June 1980, facts came to the attention of the Appellant District that the Respondent was discovered to have been using district time to conduct his private business; using district facilities for private gain; being absent from work for a number of days without the knowledge or permission of the district; having allowed students of tender years (13 & 14 years of age) to become stranded at Disneyland at night; and having a cavalier attitude towards the welfare of children at the school. Upon discovering the foregoing, the superintendent, pursuant to *Education Code section 35035*, subdivision *(c)*, reassigned the Respondent from the administrative position of principal to the lesser administrative position of supervisor of special projects. The superintendent, Dr. Richard Welte, in consultation with the Appellant Board, had considered initiating dismissal proceedings. However, they ultimately decided that transfer to a position where closer supervision could be exercised over the Respondent was more in order. The Appellant Board, at its meeting on July 15, 1980, ratified the reassignment of the Respondent by the superintendent on June 18, 1980. Respondent was notified orally during the early part of June 1980, and formally in a letter to him dated July 22, 1980, from the law firm of Wagner & Wagner, counsel to the Appellant District.

doubt be over before any appeal could be heard. Judge Prenner has turned out to be a pretty good prophet in this regard.

On July 23, 1980, the Respondent made an ex parte request and was granted an alternative writ of mandate. A hearing was held before Judge Prenner on August 20, 1980. The court issued its ruling in the form of a minute order dated August 20, 1980. On August 26, 1980, both counsel made requests for findings of fact and conclusions of law pursuant to rule 232(b) of the California Rules of Court. Findings of fact and conclusions of law were signed by the court and also filed on September 17, 1980. A writ of mandate was signed, filed, and entered on September 22, 1980. A timely notice of appeal was then filed by appellants on September 30, 1980.

### III

#### CONTENTIONS ON APPEAL

A. *Appellants' Contentions:*

1. The granting of the petition for writ of mandate by the lower court was without any legal basis, because no evidence was admitted at the time of trial.

2. The case of *Hoyme* v. *Board of Education* (1980) 107 Cal.App.3d 449 [165 Cal.Rptr. 737] is not applicable to the fact in the case at bench.

3. Education Code section 44951 is an economic section and its purpose is to protect against a sudden decline in pay and not to effectively grant "tenure" to a particular administrative position.

4. A school board may ratify assignments made pursuant to Education Code section 35035, subdivision (c), after July 1 of any year with the ratification then relating back and becoming effective as of the date of the act of transfer.

5. The Respondent was not entitled to a hearing on the reasons for his reassignment.

6. The record establishes that the Respondent breached his contract and was, therefore, reassigned for cause.

7. There can be no award of attorney's fees pursuant to Government Code section 800 inasmuch as there was no evidence introduced at the time of trial as to who, if anyone, was responsible for those fees.

8. There can be no award of attorney's fees pursuant to Code of Civil Procedure section 1021.5 because there was no showing of enforcement of an important right affecting the public interest.

B. *Respondent's Contentions:*

1. The procedures followed by the lower court were in accordance with the law and common practice in writ proceedings, and in any event, the appellants waived any objections thereto by their failure to raise these objections before the lower court either in their objections to the findings of fact and conclusions of law or by a motion for new trial.

2. The holding in the case of *Hoyme* v. *Board of Education* is not limited to the reassignment of an administrator to a teaching position as Appellants contend.

3. Education Code section 44951 is not merely an economic section.

4. Assuming, arguendo, that a valid notice of possible release had been given to the Respondent-petitioner prior to March 1, 1980, the District school board still had to formally act prior to the beginning of the new school year on July 1, 1980, to validly release him from his position as a principal to an administrative position of lesser status; that the doctrine of relation back has no application in this case; and finally, that neither Education Code section 35035, subdivision (c) or (d) or board policy can authorize the board to delegate the power to reassign an employee to the superintendent.

5. The constitutional rights of the Respondent-petitioner under due process clauses of both the United States and California Constitutions were violated by the failure of the Appellant District to give him *notice* of the reasons for its decision releasing him from his position as principal and also by failing to afford him some type of *hearing* to confront those reasons prior to its action purporting to release him.

6. The contention by the appellants that the Respondent-petitioner breached his contract and was, therefore, reassigned for cause is not

supported by the record nor by the findings of fact made by the lower court and, therefore, should not be considered by this court.

7. The award of attorney's fees to the Respondent was justified under Government Code section 800 because he made an adequate showing to the lower court that he was personally obligated to pay his attorney's fees well in excess of $1,500.

8. The award of attorney's fees under Code of Civil Procedure section 1021.5 was justified because the Respondent made an adequate showing before the lower court that this litigation involved the enforcement of an important right affecting the public interest.

## IV

### ISSUES ON APPEAL

A. Does the record establish that the Respondent breached his contract and that he was, therefore, reassigned for cause?

B. If not, was there a legal basis for the granting of the petition for writ of mandate by the lower court?

C. Is the case of *Hoyme* v. *Board of Education* applicable to the facts in the case at bench?

D. What was the legislative purpose behind the enactment of Education Code section 44951?

E. May a school board ratify assignments made pursuant to Education Code section 35035, subdivision (c) after July 1 of any given year?

F. If so, does the ratification relate back and become effective as of the date of the transfer?

G. Was the award of attorney's fees pursuant to Government Code section 800 proper based on the evidence that was before the lower court?

H. Was there a proper showing of enforcement of an important right affecting the public interest to justify the award of attorney's fees pursuant to Code of Civil Procedure section 1021.5?

V

DISCUSSION

A. *Propriety of Granting Writ of Mandate Without Taking Any Testimony*:

■ The appellants contend first of all that because no evidence was received and considered by the lower court at the hearing conducted on August 20, 1980, there was no basis upon which the lower court could properly grant the subject writ of mandate, citing as authority the cases of *Ransom* v. *Superior Court* (1968) 262 Cal.App.2d 271, 277 [68 Cal.Rptr. 507], and *Bone* v. *Superior Court* (1966) 245 Cal.App.2d 972, 974-975 [54 Cal.Rptr. 406].

The Respondent, on the other hand, contends that the procedures followed by the lower court were in accordance with the law and common practice in writ proceedings, and in any event, appellants waived any objection thereto by their failure to raise this objection before the lower court either in their objections to the proposed findings of fact and conclusions of law or by a motion for a new trial.

The Respondent also argues that neither of the two cases cited by appellants (i.e., *Ransom* and *Bone*) have any application to the facts in the case at bench. We agree because both of those cases involved original writ proceedings in the Court of Appeal to annul contempt citations as opposed to an administrative mandamus which is the subject of this appeal.

In both *Ransom* and *Bone*, the reviewing courts emphasized that because of the quasi-criminal nature of contempt proceedings, a higher evidentiary standard is required.

As stated in *Ransom* v. *Superior Court, supra* (262 Cal.App.2d at p. 275): "'In a proceeding such as this to have petitioner adjudged guilty of an indirect contempt because of an alleged violation of an order of the court, he could not be deprived of his property or liberty "without evidence having been offered against him in accordance with the established rules, and an opportunity to cross-examine those whose evidence is given against him, and the opportunity to present evidence in his own behalf."'" (Citing as authority *Collins* v. *Superior Court* (1956) 145 Cal.App.2d 588, 594 [302 P.2d 805].)

As compared with the special procedures that have been developed for writs connected with contempt proceedings, the only statutory rules concerning the procedures to be followed in normal writ of mandate proceedings such as the one at bench are that when there is no return or answer "... [t]he writ cannot be granted by default" (Code Civ. Proc., § 1088), and if, as here, there is a return or answer and it "... raises only questions of law, or puts in issue immaterial statements, not affecting the substantial rights of the parties, the court must proceed to hear or fix a day for hearing the *argument of the case*." (Code Civ. Proc., § 1094.) (Italics added.) As set forth in 5 Witkin, California Procedure (2d ed. 1971) Extraordinary Writs, section 164, pages 3929 and 3930: "Under these two statutes [Code of Civil Procedure sections 1088 and 1094] the only prohibited procedure is an entry of judgment by default for failure to file any answering pleading. If the defendant 'answers,' but raises only questions of law, the answer is in substance a demurrer ..., the hearing is only an argument, and the decision may be rendered on the pleadings without the introduction of evidence. (See *Hayward* v. *Pimental* (1895) 107 C. 386, 390, 40 P. 545; *Scannell* v. *Wolff* (1948) 85 C.A.2d 489, 491, 195 P.2d 636; cf. *Weisman* v. *Board of B. & S. Commrs.* (1927) 85 C.A. 493, 494, 259 P. 768; *Jaquith* v. *Justice's Court* (1926) 77 C.A. 542, 247 P. 224; C.E.B., Civil Writs, p. 407.)"

The record reveals that the appellants' answer below admitted all of the material allegations of the petition which ultimately formed the basis of the court's findings of fact, denying in whole or in part only certain immaterial factual statements contained in paragraphs 1 (concerning Respondent's status), 8 (concerning certain details of a conversation between Respondent and the district superintendent, Dr. Welte), and 11 (concerning when the board action to release Respondent had occurred).[2] The only affirmative defense raised by the answer concerned the adequacy of Respondent's legal remedy. (See C.T. pp. 56-57 and appellants' memorandum of points and authorities in opposition to the writ of mandate which were directed solely to issues of law.)[3]

---

[2]The answer also denied a portion of paragraphs 14 and 22, and all of paragraphs 15, 19, 20, 23, and 24 of the petition, all of which were allegations concerning Respondent's legal rights or of violations of the law based upon the facts previously pleaded.

[3]With the exception of arguments I, II, and III of appellants' opening brief, all of the remaining arguments contained therein were copied verbatim from appellants' points and authorities in opposition to the petition for writ of mandate below, which were then, are now, directed purely at questions of law.

Appellants' responding pleadings below raised *only questions of law*, placing in issue only immaterial factual statements, not affecting the substantial rights of the parties, and thus under Code of Civil Procedure section 1094, *supra*, Appellants were entitled only to a day for "hearing the argument of the case." The decision was properly rendered by the court after that hearing, based upon the pleadings, declarations, and oral arguments, without the formal introduction of any of the written documents into evidence.

Additionally, appellants never objected to the procedures followed by the lower court although given ample opportunity to do so. Their failure to object below rendered as evidentiary matter all of the written documents submitted to the superior court. Emphasizing the importance of filing an answer in a writ of mandate proceeding, the reviewing court in *Felice* v. *City of Inglewood* (1948) 84 Cal.App.2d 263, 267 [190 P.2d 317] noted that: "It is, of course, proper to file affidavits and copies of records in response to the alternative writ or to the order to show cause as evidence in refutation of the allegations of the petition or as proof of the defensive matters pleaded in the answer. *Unless objection be made such affidavits and records are to be considered as evidence* and if not controverted by counter-affidavits or by oral evidence offered at the hearing their contents will be deemed to be true." (Italics added.)

In *Felice* v. *City of Inglewood, supra*, the plaintiff sought superior court review by way of a writ of mandate of the city council's denial of his petition for a business permit. A petition was filed and an alternative writ issued, and the defendants filed a demurrer, accompanied by an "offer and submission by defendants of all documents and instruments on file in response to order to show cause." A hearing was had on the petition, demurrer, and alternative writ,[4] after which the court overruled the demurrer, denied the peremptory writ, discharged the alternative writ, and ordered judgment for defendants (*Felice* v. *City of Inglewood, supra*, 84 Cal.App.2d at p. 265).

The findings of fact and conclusions of law of the *Felice* court (at p. 265) recited: "... that in conducting the hearing the court 'considered the Plaintiff's First Amended Complaint or Petition and all supporting documents and evidence presented and submitted by the plaintiff, and

---

[4]Apparently the hearing was based solely on the affidavits and other documents submitted, without their formal introduction into evidence. (See second ground of appeal advanced in *Felice, supra*, 84 Cal.App.2d at page 266.)

... the response of the defendants and all documents and evidence presented and submitted by defendants in making their response, answer and defense in said matter.'"

The above recitation is strikingly similar to the introductory paragraph of the findings of fact and conclusions of law here, which read in relevant part: "This matter came on regularly for hearing ... pursuant to the verified Petition of BARRY ELLERBROEK and Alternative Writ of Mandate and Order Directing Issuance served on Respondents ... in the manner provided by law .... Respondents having filed a response to the Petition, each side having submitted a memorandum of points and authorities in support of their respective contentions, the exhibits and declarations of each side having been received in evidence and examined by the Court, ... arguments having been presented and the cause submitted for decision, the court makes the following Findings of Fact:"

The first ground of appeal of the plaintiff in *Felice*, was "... that the judgment [was] erroneous for the reason that no verified answer was filed after the demurrer was overruled, and no trial of the issues was had." (*Felice* v. *City of Inglewood, supra*, 84 Cal.App.2d at p. 265.) The *Felice* court responded (at pp. 265-266) that: "The 'offer and submission' of affidavits of respondents and certified copies of documents, instruments and proceedings filed contemporaneously with the demurrer as an 'answer and response,' although not conforming to standard practice, must, in the absence of objection made by appellant at the time of the hearing, be construed both as an answer to the petition for a writ of mandate and as *evidentiary matter relating to the issues raised by the petition.* Since they were filed for the purpose of controverting the allegations of the petition and of stating matters in defense thereof, and the record does not disclose that appellant (1) objected to the filing of the various affidavits and documents, or (2) objected to their consideration by the court upon the hearing, either as denials of the allegations in the petition or as defenses thereto, or as evidence controverting the same, or (3) requested leave to file affidavits answering or denying any of the affidavits and documents presented by respondent, or to offer evidence in denial thereof, it must be assumed that he was satisfied with the record and was willing to submit the case to the court without further pleadings or evidence." (Italics added.)

At no time during oral argument at the hearing below, or in their objections to the proposed findings of fact and conclusions of law, or in

any of the postjudgment proceedings, did appellants raise any objections to the procedures followed by the superior court, either by objecting to the filing of the documents, objecting to their consideration by the court, or by requesting leave to file additional documents. It thus "... must be assumed that [they were] satisfied with the record and [were] willing to submit the case to the court without further pleadings or evidence." (*Felice* v. *City of Inglewood, supra,* 84 Cal.App.2d at p. 266.)

The second ground of appeal of the plaintiff in *Felice,* was that he did not stipulate that the matter should be heard on the affidavits and documents. The court responded that this ground was unsupported by the record, noting that: "The recital in the findings ... and the declaration in the judgment that 'documentary evidence having been introduced, and the matter and the issues involved argued and submitted for decision' is conclusive that no objection was made to the procedure followed. Appellant had the privilege and opportunity of presenting evidence on his own behalf and of controverting that presented by respondents but failed to take advantage of his opportunity." (*Felice* v. *City of Inglewood, supra,* 84 Cal.App.2d at p. 266.)

Similarly, the recitation in the findings of the superior court in this case that "... the exhibits and declarations of each side having been received in evidence and examined by the Court, ... arguments having been presented and the cause submitted for decision ..." "... is conclusive that no objection was made to the procedure followed." (*Felice* v. *City of Inglewood, supra,* 84 Cal.App.2d at p. 266.)

Finally, the *Felice* court concluded: "If appellant was dissatisfied with the action of the court in deciding the case and rendering judgment on the record before it at the hearing his objections should have been presented to the trial court by a motion for a new trial, supported by affidavits stating the facts as to whether he consented or objected to the procedure adopted by the court. No affidavits having been filed indicating that appellant did not approve the submission of the cause in the manner above described, we must accept the declarations of the court as found in the findings and judgment." (*Felice* v. *City of Inglewood, supra,* 84 Cal.App.2d at p. 266.)

The appropriate remedies that were available to appellants to prevent the error alleged in argument I in their brief from occurring were to have objected at trial to the submission of the case solely on the basis of

the various materials listed above and also to have offered to present additional evidence for consideration by the trial court. Having failed to avail themselves of those remedies at trial, the appellants cannot now object for the first time on appeal to the procedures followed in the trial court.

A second case directly on point is *Adelt v. Richmond Sch. Dist.* (1967) 250 Cal.App.2d 149 [58 Cal.Rptr. 151]. In *Adelt*, the plaintiff appealed from the denial of her petition for writ of mandate, seeking to compel the Richmond School District to reinstate her as a tenured teacher. In opposition to the petition, the school district "... filed the affidavit of James Merrihew, its district superintendent. Said affidavit (to which were attached several relevant exhibits) expanded upon appellant's statement of the facts and denied the wrongdoing alleged in the petition." (*Adelt v. Richmond Sch. Dist., supra*, 250 Cal.App.2d at p. 151.) The *Adelt* court noted (at p. 151) that: "*At the time of the hearing on the petition, neither party offered any evidence.* The trial court based its determination on 'the petition of Eloise Adelt, ... and the return thereto of the respondent Richmond School District, et al.' [¶] *Appellant did not object to treating the affidavit as a 'return' to her petition or to submitting the case on the documents alone.*" (Italics added.)

The *Adelt* court (at p. 151) concluded: "Under these circumstances, the affidavit of James Merrihew, together with attached exhibits, 'although not conforming to standard practice, must, in the absence of objection made by appellant at the time of the hearing, be construed both as an answer to the petition for a writ of mandate and as evidentiary matter relating to the issues raised by the petition.'" (Citing as authority *Felice v. City of Inglewood, supra*, 84 Cal.App.2d 263, 265-266, and 3 Witkin, Cal Procedure (1954) Extraordinary Writs, § 65, p. 2559.)

Based on the *Felice* and *Adelt* decisions discussed above, we hold that there was no procedural deficiency in the proceedings before the lower court which would cause us to vacate the writ of mandate issued by the lower court on that basis alone.

B. *Applicability of "Hoyme" Decision:*

As was noted above, both parties have raised a number of issues in this appeal. However, the basic question seems to be the legal conse-

quences that arose from the reassignment of the Respondent as a principal of a school to another administrative position within the Appellant District at the same salary but within a different salary schedule. The facts make it clear that the Respondent was not discharged, dismissed or suspended, but rather was merely transferred or reassigned from one administrative position to another.

■ As was noted above, appellants contend that Respondent "breached his contract" and that he was therefore reassigned or transferred "for cause" and therefore the provisions of Education Code section 44951 were not applicable to such assignment.

Respondent points out that the trial court rejected this contention by refusing appellants' request for a finding of fact to that effect. The Respondent also points out that the appellants have not raised as a ground for their appeal any failure on the part of the trial court to make findings on all relevant issues. Respondent therefore argues that appellants may not logically base a ground of their appeal upon alleged facts not found to be true by the trial court without having raised on appeal the question of the adequacy or accuracy of the findings that were made by the trial court. Respondent therefore contends that the questions of whether Respondent breached his contract or was reassigned for cause should not be considered by this court in deciding this appeal.

We disagree with this procedural contention by Respondent. While it is true that appellants have not specifically challenged any of the findings that were made by the trial court, they have raised in this appeal the general issue of whether there was an adequate legal basis to justify the granting of the writ of mandate by the trial court because no evidence was admitted at the time of trial. Appellants seem to be arguing in effect that findings upon which the trial court decided to issue the writ of mandate were not based upon any evidence that was properly before the trial court. ■ Also, while it is true that a party cannot for the first time on appeal urge that the findings by the trial court are ambiguous, or uncertain, or not sufficiently specific, if he made no objection to them, either before they were signed or on motion for new trial (see 4 Cal.Jur.3d, Appellate Review, § 151, pp. 223-224), the request by the appellants that the trial court make certain findings preserves the issue of the refusal by the trial court to make such findings for appeal.

Having determined that we can properly consider appellants' contention that Respondent "breached his contract" and was therefore reassigned or transferred "for cause" and therefore the provisions of Education Code section 44951 were not applicable to such reassignment, we now proceed to consider the merits of this particular contention.

 The Respondent argues properly that appellants' contention that he was reassigned "for cause" is not supported by any finding of fact that was made by the lower court as a basis for its ruling. In fact, as was noted above, the trial court specifically refused to make such a finding when requested to do so by the appellants.

The declaration of Dr. Richard Welte, which is included as part of the record, indicates that after he had become aware of certain derogatory facts concerning the Respondent, on June 18, 1980, he directed the Respondent to come to his office. Upon his arrival, Dr. Welte simply informed the Respondent that "pursuant to Education Code Section 35035(c) and (d) and Board Policy 4115 . . ., that as of June 30, 1980, he would no longer be Principal of La Paz School." (Dr. Welte indicates in his aforementioned declaration that the reason he had taken that action was because he had concluded "that it was in the best interests of the District that [he] take steps to assign Mr. Ellerbroek to a position where closer supervision could be exercised.")

There is no indication in his aforementioned declaration that Dr. Welte advised the Respondent in the contact he had with him on June 18, 1980, to the effect that he was being transferred or reassigned to another administrative position "for cause."

The record does not contain any evidence indicating that when the governing board ratified the reassignment of the Respondent at its meeting on July 15, 1980, that the reassignment was "for cause."

It is true that the letter of July 22, 1980, came from appellants' counsel to Respondent's counsel and does purport to set forth the reasons for the Respondent's reassignment by Dr. Welte. However, as mentioned above, there was no evidence before the trial court which established that either Dr. Welte or the governing board ever advised the Respondent that he was being reassigned "for cause." Therefore, that indication by counsel for appellants appears to be simply a self-serving

statement that had no legal effect whatsoever. Therefore the refusal of the trial court to make such a finding of fact was proper based on the trial record.

■ Inasmuch as the Respondent was clearly not reassigned "for cause," Education Code sections 44951 and 35042 appear to be control-ling. Section 44951 reads as follows: *"Unless a certificated employee holding a position requiring an administrative or supervisory creden-tial is sent written notice deposited* in the United States registered mail with postage prepaid and *addressed to his last known address by March 15 that he may be released from his position for the following school year or unless the signature of such an employee is obtained by March 15 on such written notice that he may be released from his po-sition for the following year, he shall be continued in such position.* The provisions of this section do not apply to a certificated employee who holds a written contract with an expiration date beyond the current school year, or to a certificated employee holding a position that is funded for less than a school year, or to a certificated employee as-signed to an acting position whose continuing right to hold this position depends on his being selected from an eligible list established for the position, or to the termination of employment pursuant to Section 44955. *A certificated employee serving under Section 35042 shall be notified by March 1 if the governing board determines on an individual basis that he may be released for the following school year."* (Enacted Stats. 1976, ch. 1010, § 2, operative Apr. 30, 1977.) (Italics added.)

Education Code section 35042 provides simply that: "The governing board of each school district may employ a *principal* for each school under its control." (Italics added.)

These two statutes when read together appear to impose a mandatory requirement on a school district to either send a principal written notice by registered mail which is properly addressed by March 1 or the signa-ture of such employee is obtained by the same deadline on such written notice which informs him (or her) that he (or she) may be released from his position for the following school year. This mandatory require-ment applies regardless of whether the principal is released and/or reassigned to the classroom or to another administrative position.

We recognize that all of the appellate decisions to date involving the reassignment of administrators (including the *Hoyme* decision) have in-

volved a reassignment to a classroom rather than a reassignment to another administrative position such as we have in this case.[5] Those cases have uniformly held that under such circumstances, the notice required by Education Code section 44951 is a mandatory statutory prerequisite to reassignment of any administrative type school employee. However, we hold that the statute makes no express distinction between the two different types of reassignment and there is also no distinction that can be implied from the rather clear language of the statute. All of the prior decisions that have interpreted this statute have made it clear that the legislative purpose of the statute is to afford an administrator proper notice of a possible change in duties and assignment in sufficient time to seek other satisfactory employment as an administrator.

In the *Hoyme* case the court commented (107 Cal.App.3d at p. 454) on the purpose of the statute as follows: "In *Barton*, the court observed that the March 'deadline for notice is apparently intended to afford the employee time to seek other employment as an administrator.' (*Id.*, at pp. 479-480.) The procedural requirement that the affected employee acknowledge receipt of the notice of possible dismissal furthers that purpose. The formality of the procedure heightens the impact of the notice by eliminating any question that it is the official notice and that *the affected employee must recognize the need to seek other employment elsewhere immediately or face reassignment to a teaching position.*" (Italics added.)

## C. *Legislative Purpose Behind Education Code Section 44951:*

The appellants next contend that the legislative purpose behind the enactment of Education Code section 44951 is economic rather than to afford due process of an affected adminstrative employee. The appellants argue specifically that both Education Code sections 44951 and 44955 deal with the issue of notice to be given certificated employees during the month of March. The notice in Education Code section 44955 deals with the layoff of certificated teachers and administrators for the following school year. Persons affected by this section are entitled to a hearing which determines whether or not they will be severed

---

[5]See *Barton v. Governing Board* (1976) 60 Cal.App.3d 476 [131 Cal.Rptr. 455]; *Council of Directors and Supervisors v. Los Angeles Unified Sch. Dist.* (1973) 35 Cal. App.3d 147 [110 Cal.Rptr. 624].

in their employee relationship with the district. In the event an employee is laid off and unable to secure other employment, a great financial burden will fall upon him. This is the reason the cases have given for the necessity for notice in March of the year preceding layoff.

Continuing with their argument, appellants contend that because section 44951 of the Education Code is almost adjacent to section 44955, that section 44951 must also deal with the matter of notification of certificated employees in general in March of any given year. Appellants argue that section 44951 is also an "economic section" inasmuch as the reassignment of an administrator to the classroom usually results in a large drop in salary for the affected employee.

Appellants also contend that the reason for the almost six months' notice is to give an administrator an opportunity to look for another administrative position if he chooses to do so. The Respondent does not dispute this particular contention, nor do we. The court in *Barton, supra* (60 Cal.App.3d at pp. 479-480), said as much when it succinctly stated: "The March 15 deadline for notice is apparently intended to afford the employee time to seek other employment as an *administrator*." (Italics added.)

According to appellants, the Respondent was afforded the essential protection of Education Code section 44951 when he was reassigned to a different administrative position with the same work year and salary.[6] To hold otherwise would be to accept the mechanical application that appellants claim that Respondent urges; i.e., the effect is to grant "tenure" in that position from year to year. It is appellants' position that Education Code section 44951 (requiring the March notice), and Education Code section 35035 must be read to give effect to legislative intent. Education Code section 35035 provides that a certificated employee may be transferred when " . . . the superintendent concludes that such a transfer is in the best interest of the district." (Ed. Code, § 35035 subd. (c).)

The Respondent counters this particular argument by appellants by simply pointing out that such interpretation by appellants is clearly contrary to the legislative purpose in the enactment of Education Code

---

[6]Even though Respondent was reassigned to a different administrative position at the same salary *currently*, the record on appeal indicates that the new position is under a more restrictive salary schedule than Respondent's position as a principal.

section 44951 as set forth in the language in the *Barton* case, which we have quoted above.

We agree. There is no question but that the prime purpose behind the enactment of this particular statute is to afford affected administrative type employees adequate notice of a possible reassignment in sufficient time to permit such an employee to seek out other satisfactory employment prior to the beginning of the next school year.

While Education Code section 44955 does give the governing board of a school district in California the express authority to terminate the employment of even permanent employees because of certain necessary reductions in staff so that it can be said that such section may have had an economic purpose behind its enactment, the same cannot be said for section 44951.

■ The appellants next claim that a governing board of a school district in this state may ratify assignments made pursuant to Education Code section 35035, subdivision (c) after July 1 of any given year and that such ratification then relates back and is effective as of the date of the act of transfer.

Appellants argue that it is hornbook law that the process of ratification relates back to the time of the act performed by the authorized agent. It is an authorization that relates back in time to when the act ratified was done. (*Petray* v. *First Nat. Bank* (1928) 92 Cal.App. 86 [267 P. 711].)

Subdivisions (c) and (d) of Education Code section 35035 do provide that the district superintendent has the power to make assignments of all certificated personnel *subject to board ratification*. It states in pertinent part: "(c) Subject to the approval of the governing board, assign all employees of the district employed in positions requiring certification qualifications, to the positions in which they are to serve. Such power to assign includes the power to transfer a teacher from one school to another school at which the teacher is certificated to serve within the district when the superintendent concludes that such a transfer is in the best interest of the district.

"(d) Upon adoption, by the district board, of a district policy concerning transfers of teachers from one school to another school within

the district, have authority to transfer teachers consistent with such policy." (Ed. Code, § 35035, subds. (c) and (d).)

The Respondent was notified orally on June 18, 1980, by the superintendent, that he would be reassigned from the position of principal to that of an administrator assigned to the district office. He was thereafter notified by letter dated June 20, 1980, of his reassignment. The governing board, at its meeting on July 15, 1980, ratified the reassignment. Said assignment was made pursuant to Education Code section 35035, subdivisions (c) and (d) and board policy 4115.

In the case of *American Federation of Teachers* v. *Board of Education* (1980) 107 Cal.App.3d 829 [166 Cal.Rptr. 89], the appellate court held that the acceptance of a letter of resignation of a certificated employee was effective on the day it was accepted by the superintendent of a school district in spite of the fact that the teacher attempted to withdraw the resignation between the time of acceptance by the superintendent and the ratification of that acceptance by the governing board.

In the present case we have a statute which confers the discretion to assign and reassign certificated employees upon the superintendent. The statute also provides for the adoption of board rules for the exercise of the right of assignment. The district adopted board rule 4115 which provides for assignments. The assignment was made pursuant to and in conformance with that rule. The only thing left in the case at bench, as in *American Federation of Teachers* v. *Board of Education, supra,* was for the board to ratify. The board did ratify the reassignment and in so doing made the reassignment as of June 20, 1980.

In response to this contention by appellants, the Respondent has a three-pronged argument. He contends, even assuming, arguendo, a valid notice of possible release had been given to him prior to the statutory deadline of March 1, 1980, that (1) the Appellant District still was required to formally act prior to the beginning of the new school year on July 1, 1980, to "release" him from his position as principal to another administrative position of lesser status; (2) the doctrine of relation back has no application to the problem presented in this case; and (3) neither Education Code section 35035, subdivision (c) or (d) nor board policy 4115, authorizes the board to delegate the power to the superintendent to reassign a principal such as Respondent to another position.

Integral portions of a certificated employee's employment contract established at the time of contract renewal, such as those provisions establishing the position, salary, or other health and welfare benefits of that employee, may not be unilaterally changed by a school district after the beginning of the school year on July 1, but may only be altered by formal board action *prior to July 1.* This principle was firmly established in the case of *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332 [142 Cal.Rptr. 111], and the superior court found it to be directly applicable to this case. (See conclusion of law No. 3.)

In the *A.B.C. Federation* case, there was a district policy in full force and effect on July 1, 1975 (defined in then § 5101, now renumbered § 37200, as the first day of the school year), providing a stipend (an amount added to the teachers' basic annual salary rate) for teachers assigned to the district's continuation high school. In accordance with that policy, the teachers received the stipend during the 1974-1975 school year. On March 18, 1975, the teachers received their notices of employment for the 1975-1976 school year as certificated employees. As requested by that notice, the teachers notified the district of the acceptance of employment by May 9, 1975. The deadline for notifying the district under then code section 13260 (now renumbered, § 44842) was July 1, 1975. On August 4, 1975, the school board amended this policy to delete the extra salary provided for continuation high school teachers. The Court of Appeal affirmed the judgment of the trial court awarding the continuation high school teachers the extra pay plus interest, concluding as follows: "As of July 1, 1975, board policy No. 4142 provided a $515 annual stipend for continuation high school teachers. That provision had been an integral part of the previous contracts with these teachers who had all received the increment in the 1974-1975 school year. *Since the school board did not change that provision prior to renewal of the contract, it was bound to abide by the provision of the contract then in force.* Renewal of the Teachers' contracts for the 1975-1976 school year occurred as of July 1, 1975, the beginning of the school year. (Ed. Code, § 5101.) [now renumbered § 37200] Thus, the District's unilateral action in amending the board policy on August 4, 1975, could have no effect on the contractual right of the Teachers to receive that annual stipend for performance of the same duties during the year 1975-1976." (*A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist., supra,* 75 Cal.App.3d at p. 339, italics added; fn. omitted.)

However, more important to the instant appeal are the court's remarks immediately preceding the above conclusion, wherein it cited *Rible* v. *Hughes* (1944) 24 Cal.2d 437, 443 [150 P.2d 455, 154 A.L.R. 137], and stated that: "... under the statutory provisions which were the predecessors of Education Code sections 13258 and 13502 [now renumbered §§ 44840 and 45022] (teacher tenure acts), 'the contract of employment of a permanent teacher *is automatically renewed from year to year upon the same terms unless, prior to renewal, the school board acts to change such terms....*' ... [¶] It is undisputed that all of the teachers had been rehired by operation of law, having perfected their right to employment by notifying the District, as requested, of their intent to accept the renewed employment." (*A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist., supra,* 75 Cal.App.3d at p. 339) (Italics added.)

Here, even assuming a valid March 1 notice had been sent to the Respondent of the possibility of his release, the Appellant Board "did not act" to change his former contract of employment as principal prior to July 1, 1980, the statutory beginning of the school year. His contract of employment as principal was thus, pursuant to the *A.B.C.* decision, automatically renewed from the 1980-1981 school year on the same terms, and the trial court so held.

The doctrine of relation back, which appellants appear to have lifted from real property law dealing with the delivery of deeds (see *McDonald* v. *Huff* (1888) 77 Cal. 279, 283 [19 P. 499]) has no application here. If it did, the entire statutory scheme concerning notices of release to principals (Ed. Code, § 44951 and like sections) could be easily circumvented, as a district could give a principal notice of his or her release at any time and it would relate back to March 1, and the district board could take final action concerning that release at any time and it would relate back to July 1.

Implicit in this argument of appellants which was rejected by the lower court is the proposition that the Appellant Board may validly delegate the power to effect a reassignment to the district superintendent, subject to the later ratification by the Appellant Board. In support of this contention, appellants cite Education Code section 35035, subdivisions (c) and (d), and board policy 4115. We will first discuss the powers of the district superintendent under section 35035, subdivisions (c) and (d), and then his powers under board policy 4115, to demonstrate the correctness of the lower court's rejection of this theory.

### 1. *Education Code Section 35035, Subdivisions (c) and (d)*:

■ Section 35035, subdivision (c), dealing with the additional powers and duties of the district superintendent, reads: "The superintendent of each school district shall, in addition to any other powers and duties granted to or imposed upon him: . . .

"(c) Subject to the approval of the governing board, assign all employees of the district employed in positions requiring certification qualifications, to the positions in which they are to serve. Such power to assign includes the power to transfer a teacher from one school to another school at which the teacher is certificated to serve within the district when the superintendent concludes that such a transfer is in the best interest of the district."

The first sentence of subdivision (c), above, unquestionably confers upon the superintendent the power to initially "assign" all certificated employees to their "position." Implicit in this language is that a reassignment would be a movement to a different position. This section does not, however, confer upon the superintendent the unfettered power, even with board approval, to reassign (i.e., to move) a certificated employee from one position to another. If it did, it would fly directly in the face of such provisions as section 44951.

The second sentence of subdivision (c), above, states that the ". . . power to assign includes the power to *transfer* [not reassign] a teacher from one school to another school at which the teacher is certificated to serve within the district . . ." (italics added), and subdivision (d) allows a district to adopt policies concerning such transfers. The only conclusion that can be drawn from this language is that a "transfer" is a lateral movement within a position designation and a "reassignment" is a movement from one position designation to another.

Under the above section, a "transfer" (a lateral movement within a position designation, such as moving a teacher from one school to another) may be accomplished by a district even after July 1, subject to its policies concerning such transfers. A "reassignment," on the other hand (a movement from one position designation to another, such as here), must be accomplished by formal board action prior to July 1. The assertion in appellants' brief that this section "confers the discretion to assign and reassign certificated employees upon the Superintendent" is simply an incorrect reading of the section.

■

Also contrary to appellants' assertion, section 35035 subdivisions (c) and (d) does not constitute a delegation to the superintendent of the discretionary power of the board to effect an employee's reassignment prior to July 1. In fact, under the holding in *American Federation of Teachers v. Board of Education, supra,* 107 Cal.App.3d 829 (cited by appellants in support of this contention), the section would be invalid to the extent it attempted to delegate such discretionary authority. In that case, the court found that the district governing board could, pursuant to board policy, validly delegate the "entirely ministerial" act of accepting an employee's resignation to the superintendent. (*American Federation of Teachers v. Board of Education, supra,* 107 Cal.App.3d at. pp. 837-839.) But the court warned that if the policy had attempted to delegate to the superintendent, for example, the discretionary decision as to when acceptance of the resignation was to take place, it would arguably constitute an improper delegation of authority. (*American Federation of Teachers v. Board of Education, supra,* 107 Cal.App.3d at p. 838.) A careful reading of this decision totally supports the position of Respondent and the conclusion of the lower court that the Appellant Board, *not the superintendent,* must have formally acted, prior to July 1, 1980, to effect Mr. Ellerbroek's release. (See conclusion of law No. 3.)

More specifically, section 44951, providing that a principal must be notified of the possibility of his release no later than March 1 of the year preceding that release, provides that such preliminary notice (let alone the final notice) must be authorized, in advance, by formal board action. The last sentence of section 44951 provides: "A certificated employee serving under Section 35042 [i.e., as a principal] shall be notified by March 1 *if the governing board determines on an individual basis* that he may be released for the following school year." (Italics added.)

The last sentence, including the emphasized portion, was added to the section in 1971 (Stats. 1971, ch. 611, § 1, p. 1214), as a direct legislative reaction to the case of *Council of Directors and Supervisors v. Los Angeles Unified Sch. Dist., supra,* 35 Cal.App.3d 147, which was *then pending*[7] in the Court of Appeal, Second District, Division Three, which

---

[7]It should be noted that the *Council of Directors* case was not decided until October 24, 1973, when the court's opinion was filed which was *after* the 1971 amendment to section 44951 was enacted by the Legislature.

interpreted section 13443.6 (the predecessor to § 44951) prior to the 1971 amendment to effect that since that section was silent on how the giving of the notices provided for therein should be authorized and "[s]ince these notices are *merely warning notices of possible release,* [the court could see] no reason why the giving of them had to be formally authorized by the Board itself." (*Council of Directors and Supervisors* v. *Los Angeles Unified Sch. Dist., supra,* 35 Cal.App.3d at p. 153.) (Italics added.) The court then concluded that the notices required by section 13443.6 (current § 44951) could be authorized by the superintendent subject to the later ratification by the board.

But in 1971, the Legislature acted with respect to principals, to delineate how the giving of the preliminary notices of possible release were to be authorized. This amendment, as set forth above, now requires the governing board to determine on an individual basis that a principal may be released for the following year.

Based upon the court's language in *Council of Directors,* as just quoted, emphasizing the preliminary nature of the March 1 or March 15 notice as the reason why prenotice board action was not required (even based on the language of the section prior to the 1971 amendment), the court would have required prerelease formal board action to effect the final reassignment of a principal to the classroom. With the language added by the 1971 amendment, there is no longer any question that with respect to the release of a *principal,* prenotice or prerelease formal board action is required for both the March 1 preliminary notice of possible release and the final effecting of that release which must be done prior to the new school year on July 1.

### 2. *District Board Policy 4115*

■ District board policy 4115, cited by appellants not only does not authorize the delegation of the board's power to effect a principal's "release" to the superintendent, but the within release, even if preceded by a valid March 1 notice, would violate that policy. The second paragraph of board policy 4115 reads: "All changes in assignments of personnel involving *change in status* or in salary classification shall be submitted to the Board of Education for approval." (Italics added.)

The change in the Respondent's position from "Intermediate School Principal" to "District Supervisor," as evidenced by their different posi-

tions on the salary schedule was a definite change in status without prior board approval in direct violation of this policy. It is well settled that such action by a district, in violation of its own policies, cannot be upheld, and we so hold. (See *Pasadena Unified Sch. Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].)

D. *Award of Attorney's Fees Pursuant to Government Code Section 800:*

■ The appellants next contend that the lower court should not have awarded any attorney's fees to Respondent pursuant to Government Code section 800 because there was no evidence before the court as to who, if anyone, was responsible for those fees. Appellants cite as authority for this position the case of *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist., supra,* 75 Cal.App.3d 332. In the *A.B.C. Unified* case the reviewing court held (at p. 342) that: "Government Code section 800 provides that in a civil action to review an administrative determination by a public entity, the court may award reasonable attorney's fees not to exceed $1,500 to a prevailing party where the complainant 'is personally obligated to pay such fees' and the administrative determination resulted from 'arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity.'"

The Respondent contends that his personal responsibility for attorney's fees well in excess of the $1,500 statutory maximum was properly placed before the lower court in his reply to appellants' objections to the proposed findings of fact and conclusions of law wherein appellants asserted that he had not established that he was personally responsible for the attorney's fees that he had incurred in bringing this action.

Respondent argues that it has been held that it is irrelevant what procedure a party uses to assert a claim for attorney's fees, whether by memorandum or motion, so long as the allegation has been properly placed before the trial court in some fashion. (*Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215, 220 [134 Cal.Rptr. 332].) We note, however, that the *Plumbing etc.* case specifically dealt with the matter of a claim of attorney's fees *incurred on appeal* and not with a claim for attorney's fees presented to the trial court such as in the instant case.

In the case of *Rutherford* v. *Board of Trustees* (1974) 37 Cal.App.3d 775, 782 [112 Cal.Rptr. 560], the reviewing court in upholding a denial of Government Code section 800 attorney's fees, pointed out that allegations of "arbitrary or capricious action" and of petitioners' personal obligation to pay attorney's fees of $1,500 "should have been placed before the court in *some* fashion." (Italics added.) In the *A.B.C. Federation* case, *supra*, 75 Cal.App.3d 332, the appellate court held that these requirements were met by the petition alleging such arbitrary and capricious action and by the petitioner's sworn testimony showing such an obligation.

In another case, *Olson* v. *Hickman* (1972) 25 Cal.App.3d 920, 924 [102 Cal.Rptr. 248], the reviewing court held that a declaration filed by the petitioner was sufficient to evoke Government Code section 800.

In the later *Plumbing etc.* case the court held (64 Cal.App.3d at p. 221) that: "Section 800 . . . prescribes four conditions for the recovery of attorney's fees: 1) a civil action to appeal or review an administrative proceeding; 2) the complainant must prevail against a public entity or official; 3) arbitrary or capricious action by the public entity or official; and 4) the complainant is personally obligated to pay the fees."

In the case at bench, the Respondent claims that he has met all four of the statutory requirements listed above and, therefore, the lower court could properly award him attorney's fees pursuant to Government Code section 800. It is clear that the first two requirements have been met by the Respondent. As to the third requirement, it has been held that the question of whether the administrative decision in question resulted from the arbitrary or capricious action of a public entity is a question of fact. (*Plumbing etc. Employers Council* v. *Quillin, supra*, at p. 221; *Midstate Theatres, Inc.* v. *Board of Supervisors* (1975) 46 Cal. App.3d 204, 212 [119 Cal.Rptr. 894]; *Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916].) The lower court made a finding in favor of the Respondent on this requirement which will not be disturbed on appeal because the appellants have made no showing that such finding was not supported by substantial evidence which was part of the record that was before the lower court and, therefore, constituted an abuse of discretion. In fact, in the *A.B.C. Federation* case cited above by appellants as authority for their position, the reviewing court stated (at p. 343 of 75 Cal.App.3d) that: "'A

finding that governmental conduct is arbitrary and capricious is essentially one of fact' [citations] and will be sustained on appeal unless an abuse of discretion is shown."

We hold that the lower court's award of attorney's fees to Respondent pursuant to Government Code section 800 was proper.

E. *Showing of Important Right Affecting the Public Interest*:

■ The appellants next contend that Respondent failed to make any showing of an important right affecting the public interest which is the fundamental objective of the private attorney general doctrine which justifies the award of attorney's fees, citing as authority the case of *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200].

The Respondent, on the other hand, claims that he did make an adequate showing before the lower court that this litigation did involve an important right affecting the public interest, and that he was thereby entitled to an award of attorney's fees under Code of Civil Procedure section 1021.5.

The Respondent contends that this case does involve an important right affecting the public interest in that if the writ of mandate which was granted by the lower court is affirmed by this court, this would be the first case to clearly enunciate the due process rights of school administrators faced with release from their positions in violation of their statutory rights as to notice. He argues in particular that this would be the first appellate decision to firmly establish the applicability of the July 1 deadline for formal board action on personnel decisions concerning principals.

We agree with the position advanced by the appellants that the facts of this case do not involve an important right affecting the public interest. Therefore, we hold that the award by the lower court pursuant to Code of Civil Procedure section 1021.5 was not justified.

For the reasons discussed above, we affirm the judgment granted by the lower court and the award of costs to Respondent as well as attorney's fees in the maximum amount of $1,500 pursuant to Government

Code section 800. However, we reverse the award of attorney's fees over and above $1,500 pursuant to Code of Civil Procedure section 1021.5.

Kaufman, Acting P. J., and McDaniel, J., concurred.